ALBANY,
Dec. 1831.
Maynard
v.
Beardsley.

---

## MAYNARD *vs.* BEARDSLEY.

In an action for a *libel*, a previous publication by the plaintiff cannot be given in evidence by the defendant, unless the publication complained of as libellous is manifestly an *answer* to, or *commentary* upon the previous publication.

Evidence of such previous publication will not be received in *mitigation of damages* on the ground of provocation, unless not only the connection between the publications be manifest, but also that the provocation be so *recent* as to induce a fair presumption that the injury complained of was inflicted during the continuance of the feelings and passions excited by the provocation. Under other circumstances, libellous publications by the plaintiff, affecting the defendant, are inadmissible in mitigation, the only remedy of the party being by cross action.

The defendant may mitigate damages by shewing the plaintiff a common libeller, but it must be done in the same way as *general reputation* is proved; publications by the plaintiff cannot be resorted to for that purpose.

In an action for a *libel*, it is not admissible for a witness to state his understanding or construction of the publication; he can *testify* only to *facts*, and not to his opinions or conclusions.

*It seems*, however, that where a libel is seen but by a few persons, neither of whom understand it as conveying an injurious imputation upon the plaintiff, such fact may be given in evidence to rebut the presumption of its publication as a libel.

ERROR from the supreme court. Beardsley sued Maynard in the supreme court for a *libel*, published in a newspaper in the village of Utica, on the 20th June, 1828, charging him

with official misconduct as district attorney of the United States for the northern district of the state of New-York. The libel was proved, and that the defendant was the author thereof. The defendant offered in evidence three several publications in another newspaper, printed in the same village, on the 11th and 18th March, and on the 17th June, 1828, and offered to prove that such publications were generally understood to apply to him, and that the plaintiff was the author of the publication of the 17th June, 1828, and that it was also generally understood that the article complained of by the plaintiff as libellous, was *caused* by, and written in consequence of, and *in answer* to such publication. The circuit judge, after examining the articles offered to be given in evidence by the defendant, decided that they had no relation to the subject matter of the publication complained of as libellous, and refused to receive them in evidence. A witness for the defendant, who testified that he read the article complained of as libellous, at the time of its first appearance, was asked by the defendant *how he understood it ;* which question was objected to and overruled by the judge. The defendant excepted to the decisions, and the jury found a verdict for the plaintiff. The defendant on a bill of exceptions moved the supreme court for a new trial, which was denied, and judgment rendered for the plaintiff. The defendant sued out a writ of error. For a more full *statement* of the case, the *arguments* of counsel, and the *opinion* delivered by the supreme court, see 4 Wendell, 336 to 360.

The cause here was argued by

*J. A. Spencer and M. T. Reynolds,* for the plaintiff in error and by

*H. Denio & G. C. Bronson,* (attorney general,) for the defendant in error.

The following opinions were delivered :

By the CHANCELLOR. The publication set out in the declaration of the plaintiff below, taken in connection with the facts disclosed on the trial, unquestionably imputes to him official

ALBANY,
Dec. 1831

Maynard
v.
Beardsley.

misconduct, and is therefore libellous.   This being a question of construction for the court and jury after the facts had been ascertained, it was not competent for the defendant to call witnesses and ask them how they understood the publication ; for thus the witnesses would be constituted the judges both of law and fact, instead of the tribunal organized for that purpose.   I consider this question as having been settled in our courts more than twenty years since, in the case of *Van Vechten* v. *Hopkins*, 5 Johns. R. 211.   And it probably would not again have been raised here but for the remarks of a recent writer on the law of evidence, 2 Starkie, 861.   Mr. Starkie's observations are unquestionably founded upon the loose practice sometimes adopted at nisi prius, and which is alluded to by Judge Van Ness, 5 Johns. R. 226.   When the defendant does not seriously mean to contest the applicability of the libel to the plaintiff, the general question is frequently asked, whether from reading the libel, the witness applied it to the plaintiff, without calling upon him to state the facts and circumstances in detail, from which the jury might see that it was intended to be so applied ; but I am not aware of any case in which such general questions have been permitted to be answered, if objected to by the adverse party.  The witnesses must state the facts on which such an opinion might be founded, and leave it to the court and jury to draw the conclusion.   If indeed the libel was shown to but one person, or to a very few, if neither of them understood it as conveying any injurious imputation against the plaintiff, it might perhaps rebut the presumption that it was ever published as a libel. The character of the plaintiff could not be injured if no one knew or supposed that an injurious charge was intended to be made against him.     But in this case I am satisfied the judge was correct in refusing to permit the witnesses to state their opinions or understandings of the libel.   If the counsel for the defendant wished to elicit any fact within the knowledge of the witness, he should have asked the question in a different manner.

In the cases of *Hotchkiss* v. *Lathrop*, 1 Johns. R. 286, and *Southwick* v. *Stevens*, 10 Johns. R. 443, where the libel on its face referred to previous publications, and was evidently writ-

ALBANY,
Dec. 1831.

Maynard
v.
Beardsley.

ten in answer thereto or as a comment thereon, the court permitted such former publications to be given in evidence in connection with the libel. Similar decisions have frequently been made in the English courts, where the alleged libel purported to be a review of a particular literary production, or where an author has been attacked with reference to the character of his writings. In those cases the previous publication is received for the purpose of elucidating and explaining what was meant by the alleged libel, or for the purpose of showing it was a fair commentary on such publication, and thus to give it the character of a privileged communication, as an author and his works, or the principles which he avows in his works, are a fair subject for criticism, and sometimes for severe animadversion. In the case before us, however, there is no connection whatever between the libel on which the suit was brought and the articles offered in evidence on the part of the defendant; and no one from reading the libel merely, would even be led to suspect that any such articles were ever written. Those publications could therefore only be offered either as evidence of the general character of the plaintiff as a libeller, or that he had provoked the defendant to write the libel in question. If a man is a common libeller, he has but little claim to damages, when attacks are made on his own character; but I apprehend the only way to prove him a common libeller is in the usual manner of proving general reputation. If particular publications are resorted to for the purpose of establishing the fact, it necessarily follows that the plaintiff must be permitted to show the truth of such publications, to repel the charge of his being a libeller. Were such publications allowed to be shewn, a plaintiff might be compelled to defend the particular conduct of his whole life, so far as his writings were concerned, and that too without notice; for the defendant is not bound to give notice with his plea of any thing which is merely in mitigation of damages. He is only authorised by the statute to give notice of those things which, if pleaded, would be a bar to the action. It would be the heighth of injustice to punish a plaintiff, by a diminution of his damages, for publishing an article which was not only true, but which it might have been his duty as a good citizen to

ALBANY,
Dec. 1831.

Maynard
v.
Beardsley.

publish. So also the character of third persons might be ruined without giving them a chance to be heard, if the plaintiff was permitted to prove the truth of the former publication. This question also appears to be settled in our own courts. In *Dole* v. *Lyon*, 10 Johns. R. 447, on a trial for a libel before the late Ch. J. Kent, the defendant offered to prove that the plaintiff was a common libeller, and for this purpose offered to read several publications, in which the plaintiff had libelled different persons of good character. The evidence was rejected, and on an application for a new trial, that decision was sustained by the supreme court.

As a ground of provocation for an attack, either upon the person or the character of an individual, whatever took place at the time, may be given in evidence by the defendant in mitigation of damages; for the law makes allowance for the infirmities of human nature, and for what is done in the heat of passion, produced by the improper conduct of the adverse party. The principle on which this evidence of provocation is received is the same, whether the suit is for an injury done to the character, or to the person of the plaintiff; and I am not aware of any case in which the defendant is allowed to give in evidence, in mitigation of damages, a provocation given by the plaintiff at another time, and which has no apparent connection with the outrage for which the suit is brought. In the case of *Rochester* v. *Anderson*, 1 Bibb's R. 428, Judge Boyle, in delivering the opinion of the court of appeals in Kentucky, says, opprobrious language, used by the plaintiff at the time of a battery, may be given in evidence in mitigation of damages, but where there has been time for deliberation, the peace of society requires that men should suppress their passions, and neither reason nor law will suffer them to claim a diminution of their responsibility for their misconduct. So in the case of *McAlexander* v. *Harris*, 6 Munf. R. 465, in an action of slander, the defendant offered to prove in mitigation of damages that the plaintiff was in the habit of vilifying and insulting him and his family, but the court was of opinion that the evidence was inadmissible, and on a writ of error, the supreme court of appeals in Virginia affirmed that decision. In *Avery* v. *Ray*, 1 Mass. R. 12, the court permitted evidence of

*immediate provocation* to be given in evidence in mitigation of damages, but rejected evidence of provocation which had been given at a previous time.    In addition to these decisions in our sister states, the same question came before the supreme court of this state, in *Lee* v. *Woolsey*, 19 Johns. R. 319.    That was an action of assault and battery, for horse whipping the plaintiff.    The defendant offered in evidence, as circumstances of provocation in mitigation of damages, that the plaintiff had the day previous made scandalous insinuations against him, of which the defendant had been informed, and which he stated at the time of the assault as the reason thereof.    The evidence was rejected, and that decision was sustained by the unanimous opinion of the supreme court. The late chief justice says, to authorize circumstances of provocation to be received in evidence, they must be so recent as to induce a fair presumption that the injury for which the suit is brought was done during the continuance of the feelings and passions excited by the provocation.    The court in that case also say that if the defendant had been permitted to give in evidence the slanderous charges, it would follow that the plaintiff must be allowed to give the truth thereof in evidence. The same decision was made in the recent case of *May* v. *Brown*, in the court of king's bench in England, 4 Dow. & Ryl. R. 470, where the defendant in an action for a libel offered to give in evidence previous libels published against him by the plaintiff.    It is true, the chief justice, on the trial at nisi prius, permitted the witnesses to state generally that the plaintiff had previously libelled the defendant, but without telling the jury what those libels were ; and I agree with the distinguished counsel who argued the case for the defendant on the application for a new trial, that such evidence was far more objectionable than that offered at the trial, because it constituted the witnesses judges both of the law and the fact, as to the libellous nature, and the construction and meaning of the former publications.    It was a hasty nisi prius decision, and most manifestly wrong, notwithstanding the learned chief justice seemed unwilling frankly to admit that he was in an error ; he, however, afterwards said he should certainly pause before he would give a solemn decision of the point.    This

nisi prius decision is entitled to about as much weight as that referred to as having been made in Anthony Pasquin's case, where Lord Kenyon is represented as throwing the nisi prius record at the plaintiff's head, because his works were libellous and scandalous. 1 Campb. R. 351. The opinion of Sir James Mansfield in *Finnerty* v. *Tipper*, 2 Camp R. 77, is evidently founded upon that of Lord Kenyon, without examination of the question, although he rather thinks that it was incorrect in point of form. Certainly, neither law or common sense will ever allow the defendant to stigmatize the plaintiff as a libeller, by proving him the author of slanderous publications, without giving him an opportunity to justify such publications by shewing their truth, and that they were published from good motives and for justifiable ends. This is a right guaranteed to the citizens of this state by the constitution, and the defendant cannot, by libelling the plaintiff, and thus changing the form of the proceedings, deprive him of that right. If such evidence could be received in mitigation of damages, it would necessarily follow that it might be given without any previous notice, and the consequence would be that the plaintiff in a libel suit would frequently be surprized with evidence of this kind, which he could not have anticipated, and which of course he would be unprepared to meet or explain. In the recent case of the editor of the Lancet, against a writer in another medical journal, the defendant offered to prove that the plaintiff had frequently published articles in the Lancet reflecting on his character; but Ch. J. Best decided that such evidence was improper: he said that such libels were the subjects of cross actions, and that the proper remedy of the defendant was to have appealed to the laws of his country, and not to have sought redress by libelling the plaintiff. *Wakely* v. *Johnson*, 1 Ryan & Mood. N. P. R. 422. That is the appropriate remedy in this case, if the articles set out in the bill of exceptions are libellous, and if by any proof they can be made to apply to the plaintiff in error.

Upon a careful investigation of the case, I cannot discover that any rule of law was violated on the trial, or that the defendant was deprived of any proper defence. I therefore think the judgment of the supreme court should be affirmed.

By Mr. Senator ALLEN. Two grounds of objections are taken to the decision of the court below : First, the refusal of the court to admit proof, that the plaintiff below was the author of certain publications, charging the defendant with improper views, and that those publications were the cause, and provoked the publication charged to be libellous ; and second, the exclusion of the testimony of a witness as to his understanding of the article containing the libel.

At first view, it would appear reasonable that the provocation to abuse ought, in a measure to extenuate the offence of him who abuses in return ; but when we look at the results of such doctrine, and the extent to which it may be carried, we must be satisfied of its impropriety, particularly, in its general application to all descriptions of offences.

In the present case the counsel for the defendant below offered to prove that the plaintiff was the author of two articles published in the " Oneida Observer ;" that the defendant was alluded to in those articles ; and that it was generally understood that the plaintiff was the author of them. If this proof had been admitted, it would have been necessary to have admitted proof of still earlier publications ; for, it appears from the tenor of the articles alluded to, that they were in answer to previous articles which had appeared in the " Oneida Observer." In the piece published the 11th of March are these words " The correspondent who has set out to prove," &c. ; and in that of the 18th of the same month as follows : " Your late correspondent," &c. ; and to what extent this might have been carried cannot be foreseen, for in each case, several questions would arise, and require proof—Whether the plaintiff wrote the piece ? If he did, whether it applied to the defendant ? If it so applied, was it a libel ? And if a libel, in what degree, &c. &c. In fact, the questions that would arise, under a rule such as the counsel of the plaintiff in error has contended for, would so embarrass any jury, as to preclude the probability of their ever deciding a cause under it. How could a jury, so exactly balance the offence on each side of the question as to say what the damage sustained by the one party was, over and above the extenuating circumstances of case on the part of the other ? And then, if the publication

ALBANY,
Dec. 1831.

Maynard
v.
Beardsley.

by the plaintiff was libellous, and the defendant commences his suit for damage, shall the jury who tried the first cause be called as witnesses, to prove these views of the facts and circumstances, and the damage they had awarded in the case? In my view, all this, and more, would be the result of the rule contended for by the plaintiff in this court.

*May* v. *Brown,* 4 Dowl. & Ryl. 470, is a case in point; there it was held, that in an action for a libel, the defendant cannot, either in bar of the action, or in mitigation of damages, give in evidence other libels published of him by the plaintiff, not distinctly relating to the same subject. And in *Lee* v. *Woolsey,* 19 Johns. R, 329, a case decided in our own courts, the same principle is clearly recognized, viz. that the defendant cannot give in evidence in mitigation of damages, the acts or declarations of the plaintiff, at a different time, or any antecedent fact, which are not fairly to be considered as part, and one of the same transaction, though they may have been ever so irritating or provoking. The true rule, in my opinion, is that every offence must be answered for by the offender; and as the defendant below has had an impartial trial for the offence he has committed, and the damages awarded by a jury of his country are such, as in their judgment were justly due the offended party, if by any act of the plaintiff he has been injured in character or property, the proper remedy for remuneration is by the mode which the law has provided, and not by the setting off of one offence against another.

The exclusion of the evidence, *how the witness understood the article charged as libellous,* has appeared to me perfectly correct. It is the province of the jury to decide whether the words complained of were libellous or not, and the understanding or opinion of witnesses, as to the force and effect of those words, cannot be the subject of evidence. If one witness is permitted to state to the jury his construction of the words charged as libellous, another may be called who may put a very different construction on the same words, and so on with any number of witnesses; which, instead of determining any point of fact, would only tend to a confusion of ideas, embarrassing, instead of informing or enlightening the minds of the jury. In *Gibson* v. *Williams,* 4 Wendell, 320, it

ALBANY,
Dec. 1831.

was held that the understanding or opinion of witnesses is not received in evidence, except in matters of science, and a few special cases resting upon peculiar circumstances. It is the business of witnesses to state facts, and the province of the jury, under the direction of the court, to draw the necessary inferences and conclusions. There would be as much propriety, in my view, to permit a witness to enter into a detail of his reasons for the opinion he had formed, as to permit him to explain his understanding of the article containing the expressions charged as libellous. The former, I presume, would not be contended for in any case, neither ought the latter to be allowed. I have come to the conclusion, therefore, that the judgment of the supreme court is correct, and ought to be affirmed.

It being the *unanimous opinion* of the court that the judgment of the supreme court ought to be affirmed, it was *affirmed* accordingly.