# DAVID L. CHILD *versus* JAMES L. HOMER *et al.*

Where upon the trial of an action for a libel, the counsel on both sides said that the only question of fact was in regard to the amount of damages, and a verdict was found for the plaintiff, it was *held* that the defendant could not object, as a ground for a new trial, that the plaintiff had not proved that the libel related to himself, as alleged in the innuendoes.

On the trial of an action for a libel the defendant cannot give in evidence, in mitigation of damages, a distinct and independent libel on himself, published by the plaintiff.

But where the publication by the plaintiff is so recent as to afford a reasonable presumption that the libel by the defendant was published under the influence of the passions excited by it, or where it is explanatory of the meaning of, or of the occasion of writing the libel complained of, it may be given in evidence in mitigation of damages.

To render such evidence admissible, it is not necessary that the libel complained of should, on the face of it, refer and profess to be a reply to the libel published by the plaintiff; it is sufficient if such reference appears on comparing the publications.

THIS was an action of the case originally against George W. Otis and the present defendants, Beals and Homer, proprietors and publishers of a newspaper called the Boston Gazette, for alleged libels upon the plaintiff, who was at the time of the publication the proprietor and publisher of a newspaper called the Massachusetts Journal. Otis died, and the suit was prosecuted against Beals and Homer as survivors. The plea was the general issue.

At the trial, before *Shaw* C. J., the plaintiff gave in evidence the Boston Gazette of July 10, 1829, containing a poetical piece called " The Pill," and of July 13, containing a poetical piece called " Childe David's Pilgrimage."

The plaintiff's counsel relied upon the obvious meaning of the pieces themselves, to show that they applied to the plaintiff, as averred in the innuendoes, and no question was made upon either side, but that the libellous matter referred to the plaintiff, as alleged in the innuendoes ; but on the contrary, after the decision of the point of law as hereafter stated, the counsel on both sides said that the only question of fact related to the amount of damages ; and this was the only question argued to the jury.

The defendants offered to give in evidence, either as a justification or in mitigation of damages, several publications by the plaintiff, alleged to be libels upon their late associate

Otis, contained in the Massachusetts Journal a short time before the publications complained of as libellous in this suit, and which were the real provocation to these publications by Otis. It was objected to on the ground that there was no apparent connexion between the publications, and that one libel could not be given in evidence to justify another, where it did not purport to be a reply, or otherwise to have reference to it. Whereupon the judge ruled, that it was not competent for the defendants to give in evidence, either in justification or in mitigation of damages, a separate and independent libellous attack made upon them by the plaintiff, such publication not being referred to in the libellous publications sued for.

The defendants' counsel thought that the publications on which the action was brought, did refer to the publications by the plaintiff, so as to make the latter competent evidence within the rule, and offered articles in several numbers of the Massachusetts Journal, viz. those of the 1st, 3d, 9th, 11th, 13th and 14th of July 1829. But it appearing to the judge, that these articles were not so referred to in the pieces in controversy in this suit, as to make them competent evidence, they were rejected.

The jury gave a verdict for the plaintiff for 500 dollars; and the defendants moved for a new trial, on the grounds that the evidence offered by them was competent and ought not to have been rejected, and that the damages were excessive.

*March 8th.* *S. D. Parker*, for the defendants, now objected, as a further ground for a new trial, that the jury did not pass upon the truth of the innuendoes.

As to the evidence rejected, he argued, that although libels by the plaintiff on the defendants might not perhaps be given in evidence in bar of the action, they ought to be received in mitigation of damages ; that if the publications on which the action is founded do not expressly refer to those by the plaintiff, still it was evident, upon comparing them, that the former were in reply to the latter, and the latter therefore were admissible in evidence, as showing a provocation. *Finnerty* v. *Tipper*, 2 Campb. 77 ; *Tabert* v. *Tipper*, 1 Campb.

350 ; *Hotchkiss* v. *Lathrop*, 1 Johns. R. 286 ; *Maynard* v. *Beardsley*, 7 Wendell, 560.

*F. Dexter* and *W. H. Gardiner*, for the plaintiff. The evidence in question was not admissible in mitigation of damages, under any statute, nor at common law. The publications on the part of the plaintiff were not like the provocation by a blow in a case of assault and battery. There the party struck returns the blow in self-defence, and the blows· on both sides constitute parts of the same transaction. For this reason the party sued may show that the other was the aggressor ; but he would not be permitted to give in evidence a distinct assault, committed on a previous day. One great inconvenience which would arise from admitting in evidence under the general issue, publications by the plaintiff, would be, that he would have no notice that such evidence was to be exhibited against him, and consequently no opportunity to justify his publications. They ought at least to be made the subject of a special plea, but in that case the issues to be tried might be innumerable. The court would be obliged to try, not only the question whether the plaintiff had been libelled by the defendant, but also whether the defendant had been libelled by the plaintiff. If the defendant has been libelled, his proper remedy is by a separate action. The only qualification of the principle for which we contend, is where the libel complained of has a distinct reference to the prior publication of the plaintiff ; in which case such publication may be given in evidence. *May* v. *Brown*, 3 Barn. & Cressw. 113 ; *Wakley* v. *Johnson*, Ryan & Moody, 422. In the case at bar, the libels complained of make no reference to the previous publications offered in evidence, but contain distinct, independent charges against the plaintiff.

WILDE J. delivered the opinion of the Court. The defendants move that the verdict may be set aside, and the cause sent to a new trial ;—

1. Because there was no proof at the trial, of the innuendoes contained in the declaration :—

2. Because the evidence offered by the defendants in mitigation of damages, was competent, and ought not to have been rejected :—and

*March 18th*

3. Because the damages are excessive.

As to the first objection, it seems quite clear, that whatever might have been its effect if made at the trial, it cannot now be raised on this report. No question was made by the defendants' counsel, but that the alleged libellous matter referred to the plaintiff, as stated in the innuendoes ; on the contrary, it was agreed that the only question for the jury was the amount of damages, and that question alone was argued to them ; which is an implied admission that the innuendoes were well made out. We do not however mean to intimate that the objection, if seasonably made, would have availed the defendants, for probably enough appears on the face of the libels, to warrant a jury in finding the innuendoes, without any proof dehors.

The second objection is very fairly raised, and is supported by very weighty considerations.

The defendants offered to give in evidence, either as a justification or in mitigation of damages, several libellous publications upon their late associate Otis, the editor of the Gazette, contained in the Massachusetts Journal published by the plaintiff a short time previous to the publications complained of in this suit, as provocations to the publications by Otis. This evidence was rejected on the ground that no evidence was admissible, either in justification or in mitigation of damages, to show a separate and independent libellous attack made upon the defendants or either of them, by the plaintiff, such publications not being referred to in the libellous publications complained of.

This, as a general rule of evidence, is no doubt laid down with sufficient precision, and is well supported by the authorities. But after a careful examination of these publications, we are all of opinion that they do not fall (at least not all of them) within the scope of the rule ; but are rather applicable to another rule of evidence, which admits a party charged with a libellous publication, to show a provocation, and to explain the subject matter, occasion and intent of such publication. All these publications follow each other in rapid succession. The first of them was by the plaintiff, and appeared in the Massachusetts Journal on the 1st of July

1829   The reply of the editor of the Gazette was published the next day.   There is nothing however libellous, nor can we perceive any thing offensive, in either of these publications.   Then followed an article in the Journal of the 3d of July, and another article in the Gazette of the 4th, which were certainly highly offensive and abusive.   But here the parties paused, and it is much to be regretted that a contest so unprofitable and reprehensible, was not suffered here to terminate.   It was however renewed with increased bitterness, by an article which appeared in the Journal of the 9th of July, in which the editor of the Gazette is vilified in the most reproachful and contemptuous terms.   That this article was calculated to excite deep resentment and violent passion in the party assailed, cannot admit of doubt.   The only question therefore is, whether there was sufficient time for passion to subside, before the article in reply was written ; and we think the presumption is that there was not.   The reply, though published on the 10th, must have been written on the 9th, and probably immediately after the editor of the Gazette had seen the offensive publication in the Journal. While he was employed in rolling back the tide of abuse upon the editor of the Journal, his passions would not be likely to subside.   Such employment would rather serve to increase than to diminish his resentment.   That an article written and sent to the press, under the influence of such feelings as must have been awakened in the mind of Otis by the provocation received, should be treated with more indulgence than an unprovoked libel, is most reasonable ; and is not inconsistent with the rules of law.

The law makes allowance for the infirmities of human nature, and for acts done in the heat of passion, excited by the improper conduct of the adverse party.   It requires, however, that the provocation shall be so recent as to afford a reasonable presumption that the act complained of was done under the influence of the feelings and passions excited by the provocation.   *Maynard* v. *Beardsley*, 7 Wendell, 560. In this case we think such a presumption has been fairly raised, and that the publication in the Journal of the 9th of July ought to have been received in evidence in mitigation

Child
v.
Homer.

Child
v.
Homer.

of damages. Whether the publication in the Journal of the 11th of July ought also to be admitted, is a question of more doubt and difficulty. The article in the Gazette alleged to be a reply to that in the Journal of the 11th, was not published until the 13th. When it was written and sent to the press, does not appear; nor does it appear when the publication of the 11th first came to the knowledge of the editor of the Gazette. On a new trial perhaps other evidence on this point may be produced. But without any additional evidence, we are of opinion that the publication in the Journal of the 11th may be admitted to go to the jury; not, however, merely as a provocation to the publication of the 13th, but as connected with it, and with the publication of the 9th, and 10th, all being parts of the same controversy, and explanatory of each other.

In a publication in the Journal, of the 4th of July, the editor of the Gazette is challenged or invited to continue the controversy, which invitation he seemed ready to accept, and in the publications which followed both parties seem to have exerted themselves to reproach, vilify, and provoke each other as much as possible. Both parties were in the wrong, and it does not seem reasonable that either of them should be allowed to recover of the other any considerable damages. These circumstances distinguish this case from all the cases cited, which it would be difficult entirely to reconcile.

In the case of *Anthony Pasquin* Lord *Kenyon* admitted libels published by the plaintiff, in bar of the action. This we think was going too far, and the decision has not been supported by subsequent adjudications. But similar evidence was admitted by Sir *James Mansfield* in the case of *Finnerty* v. *Tipper*, 2 Campb. 72, in mitigation of damages. He remarks that the decision of Lord *Kenyon* was incorrect in point of form, though it was correct in point of justice. Such evidence, he says, does not amount to an absolute defence in law, but is most essential in respect to the damages. In the case of *Hotchkiss* v. *Lathrop*, 1 Johns. R. 286, previous publications by the plaintiff against the defendant were allowed to be given in evidence as explanatory of the subject

matter, occasion and intent of the defendant's publication, that appearing to be an answer to the former publications. But in *May* v. *Brown*, 3 Barn. & Cressw. 113, it was held that it is not a just ground for mitigating damages, in an action for a libel, that the plaintiff has written libels on the defendant on some other matter unconnected with that which is the subject of the action. But it was not contended in that case, that either of the libels published by the plaintiff could be said to be the provocation to the particular libel complained of. A similar decision was made in *Maynard* v. *Beardsley*, 7 Wend. 560 ; which is the strongest case in support of the doctrine contended for by the plaintiff's counsel. But the evidence offered in this case may be admitted, without materially infringing the rule laid down in *Maynard* v. *Beardsley*. There it is admitted, that slanderous publications by the plaintiff against the defendant may be shown in evidence to extenuate the offence, provided there is a fair presumption that the libel charged was written in the heat of blood, and in consequence of the provocation. So also it is allowed, that if the libel charged refers to previous publications by the plaintiff, they may be proved, to explain the subject matter, occasion and intent of the libel complained of. We cannot however agree that it is necessary that the one, on the face of it, should refer and profess to be a reply to the other ; it is sufficient if such reference appears on comparing the publications. If A should publish a letter addressed to B, calling him a rascal, or applying to him any other reproachful epithet, and B should thereupon publish an answer calling A a liar, and nothing more, we cannot doubt that both publications should be permitted to go to the jury in connexion, although the letter of B does not profess to be an answer to that of A ; for if it was intended as such, and for the purpose of retorting the abuse received, it will certainly come within the reason of the rule.

It has been objected, that the admission of evidence of this description, on a liberal scale, may operate as a surprise on the plaintiff, and will lead to a multiplicity of inquiries and proofs, which may be very embarrasing ; that if the defendant is allowed to prove slanderous publications imputed

43

to the plaintiff, the plaintiff may call for proof that he **was** the author and must be allowed to prove, on his part, the truth of such publications, and that they were published from good motives and for justifiable ends. There are cases undoubtedly in which these objections might have great weight : but in cases like the present, and we regret to say there are too many such, they have little force and application. The publications on both sides consist of editorial remarks, and there can be no question as to the authors ; and as to the truth of the publications, it would have little weight, if it could be proved, on the question of damages. For instance, in one or more of the publications in the Journal, the diminutive size of the editor of the Gazette is alluded to in contemptuous and provoking terms ; he is called an " ill-natured manikin," — " mouse most magnanimous," — " vermin small," &c. Now how could it avail the plaintiff to prove that Otis was a man under size ? would not the truth of the allusion rather serve to render it more provoking and offensive ? The same remarks will apply to other parts of these publications. On both sides, it is apparent, they were intended to be abusive and provoking, to wound the feelings, and to exasperate the passions of each other. Both parties were in the wrong; both violated the law ; how then can either of them be entitled to any considerable damages ? On the 3d of July the plaintiff throws out a challenge or defiance to the other party to continue the contest, which before appears to have been conducted in a harmless manner ; certainly it was not very offensive. If one challenges another to strike him, and afterwards brings his action for a consequent assault, there can be no doubt that such challenge may be proved in mitigation of damages ; but as the defendants are not prosecuted for the publication of the 4th in reply, this part of the controversy is not perhaps of much importance. But on the 9th the plaintiff follows up his challenge, and then followed a continued combat until the 13th ; a war of words and abusive epithets, of reproach and ridicule. These publications, we think, ought to go to the jury in connexion, as explanatory of each other, and to show a provocation. This course of administering justice we cannot think will violate

any settled rule of law ; and it may have a salutary effect in discouraging that licentious abuse of the liberty of the press, which has become a great and growing evil, and ought to be diminished.  If parties will engage in newspaper controversies, and yielding to their angry passions, will lavish abuse and slanderous imputations on each other with an unsparing hand, let them be prosecuted and punished, if the public good requires it ; but when both parties are *in pari delicto*, neither of them should be encouraged in a claim for damages and indemnity.  Such a claim must be brought forward with a very bad grace, especially when the party complaining was the one who commenced the controversy.

But we must not be understood in too broad a sense.  We do not admit the doctrine, that distinct and independent libels may be set off against each other ; or that in an action for one, the other may be given in evidence in mitigation of damages.  This would undoubtedly lead to confusion and embarrassment.  I confine my remarks to cases of recent provocations, and to those where the libels offered in evidence are explanatory of the meaning of the libels complained of, and of the occasion of writing them ; all being parts of a connected and continued controversy.  In all such cases such evidence of provocation, or explanatory matter, may be received in evidence, as we think, without violating any principle of law, or established rule of evidence.

*New trial granted.*