## HARVEY BIRCHARD, Plaintiff in error,
### vs.
## SHERMAN M. BOOTH, Defendant in Error.

| 4 | 67 |
|---|---|
| 106 | 306 |

### ERROR TO ROCK CIRCUIT COURT.

A plea of guilty to a charge of assault and battery in a criminal prosecution, may be given in evidence in a civil action for the same assault.

Where the defendant was arrested and brought before the magistrate, and the complaint (for assault and battery) being read to him, he replied, "That is all true; there is no use in denying it;" and being asked if he was to be understood as pleading guilty, he replied, "Yes, I did it. There is no use in denying it. What is to pay? How much is the bill?" *Held*, that this was a plea of guilty, and not a plea of *nolo contendere*, and that these admissions of the defendant were admissible in evidence in a civil action.

Such damages as may be presumed necessarily to result immediately and directly from the blow or force inflicted, need not be particularly and specially set out in the declaration.

In an action for assault and battery, the plaintiff may recover for damages accruing after the commencement of the suit, provided they are the direct and natural consequences of the battery.

Where an injury results which the law does not imply as the natural and necessary consequences of the assault and battery, and which are matters of aggravation, evidence of them cannot be given unless they are specially stated on the record.

In actions for assault and batery, exemplary or punitory damages may be given; and in such cases evidence of the pecuniary circumstances of the defendant is admissible.

It would seem that no provocation will reduce the damages (in an action for assault and battery) below compensatory or actual damages, unless it amounts to a justification.

The statute requires the names of the jurors composing the panel to be put into a box and drawn from thence; instead of a box the names were put into a hat and drawn from thence, no objection having been made to such mode; *Held*, that this did not vitiate the verdict.

The affidavit of a juror cannot be received to impeach his verdict.

A verdict which is the result of chance or hazard will be set aside.

Where each of the jurors marked down what he thought the damages ought to be, and these several sums were added up and the amount divided by twelve, and the jury could not agree upon the result as their verdict, and after further discussion the process was repeated, they were still unable to agree upon such result; when it was proposed that the amount found by the first "ballot" deducting $16, should be adopted as their verdict, which was agreed to; *Held*, that such was not a gambling verdict, and should not be set aside for such cause.

If the damages are not so excessive as to show marks of passion, prejudice or corruption, the verdict will not be set aside on the ground of excessive damages.

THIS was an action of trespass for assault and battery, commenced originally in the County Court of Milwaukee county, by the defendant in error, against the plaintiff in error, and removed to the Circuit Court of Rock county.

The suit was commenced on the 27th day of April, 1854, the same day of the assault complained. Plea general issue, with notice of special matter.

Several exceptions were taken to the decisions of the court below in relation to the admission of evidence, instructions to the jury, and upon a motion for a new trial.

On the trial the plaintiff offered in evidence the deposition of Jonathan Taylor, which contained evidence in relation to the wealth of the defendant. This part of the deposition was objected to by the defendant's counsel, mainly on the ground that the case was not one for vindictive damages. The objection was overruled, and exception taken.

To prove the assault and battery, among other evidence the complaint of the plaintiff for the assault and battery, made before Clinton Walworth, Esq., Police Justice of the city of Milwaukee, and proposed to follow it with proof of the conversations and admissions of the defendant at the time of his arraignment before the said justice, contained in the deposition of said police justice, and documents annexed consisting of a copy of the copy of the complaint, and a transcript from his docket of the proceedings in the criminal prosecution. Mr. Walworth testified in his deposition as follows: "When Mr. Birchard was brought to my office on the warrant, he said 'I am here—what do you want of me?' I then read to him the substance of the complaint. Mr. Birchard said, 'That is all true—I did it—there is no use in denying it.' I then remarked to him in substance, 'Mr. Birchard, am I to understand you as pleading guilty?' His reply was, 'Yes, there is no use in denying it. What is to pay?' What is the bill?'"

To this offer the defendant objected, for the reason that the complaint being a part of the entire record could not be severed, and offered separately—and because the conversations or admissions of the defendant are in the nature of a plea *nolo contendere*, and are not evidence. The court admitted the evidence so far as it related to the admissions of the defendant, but rejected the

complaint on the ground that it did not appear that the whole complaint was read to the defendant, but only the substance thereof.

Other witnesses were called, who proved the assault and battery, and the plaintiff called several witnesses and proved by others that the defendant was seriously injured; that he was confined to his house for some three weeks or more, suffered great pain, and that one shoulder-blade was fractured; to all of which the defendant objected, for the reason that the plaintiff could not recover for any damages which accrued subsequent to the commencement of the suit, which are not the necessary, fixed, certain and inseparable consequences of the act done. The objection was overruled and the defendant excepted.

On the part of the defendant, several articles were read from the *Free Democrat*, a newspaper published by the plaintiff in the city of Milwaukee. One of which was published April 26th, 1854, the day preceding the assault, headed "Haunted Block," which reflected severely upon the defendant, and which it was claimed provoked the assault, and another of the 28th of April, giving the plaintiff's own version of the affray. The detail of these articles have no bearing upon the legal questions involved, and are omitted.

After the evidence was closed, and counsel had been heard, the court charged the jury at length upon the law of the case, to the following portions of which the defendant by his counsel excepted:

"But if, on the other hand, you find that the plaintiff was doing no more than under the circumstances attending the assault, was reasonably necessary for his own defence, you will find the defendant responsible for all the injuries received by the plaintiff in the course of the affray, and the plaintiff is entitled to recover a fair compensation for all the losses and injuries which he has actually sustained, whatever provocation may have preceded the assault and battery."

"But, gentlemen, the counsel for the defendant asks the court to instruct you that in this case the plaintiff is not entitled to recover vindictive damages—they should be compensatory only.

"I cannot so instruct you. The law is otherwise. In actions for assault and battery, where the trespass is necessarily willful,

the jury is not only warranted, but in proper cases should give not merely compensatory, but exemplary damages—not only compensate the plaintiff for the actual pecuniary loss sustained by him, including above compensatory damages for his loss of time and expenses, by reason of the injuries inflicted by the defendant, but also for the amount of his personal sufferings and his mental suffering from the pain and indignity willfully done him. And you may go farther, and if you think proper, under all the circumstances of the case, you may include damages by way of example.

"By our statute, assault and battery, as a criminal offence, is not indictable. It is tried before a justice of the peace. The punishment of the public offence is by fine only, limited in the most aggravated cases to $50.

"In cases of great aggravation, therefore, I think that in actions brought by the plaintiff, it is proper that the defendant should respond in such sum as shall operate by way of example. It is upon this ground that the plaintiff is permitted to give in evidence the fact that the defendant is a man of wealth."

"Upon this subject of vindictive or exemplary damages, upon the one hand, you may consider that the defendant is a man of large property. On the other, that the plaintiff is editor of a public newspaper, and how far this article, which, it is conceded, referred to the defendant, directly tended to inflame the passions of the defendant, and to bring on the injury which the plaintiff has sustained. It is a question peculiarly for the jury, and with these instructions it is submitted to you."

The jury returned a verdict in favor of the plaintiff for $2,000; whereupon the defendant moved the court for a new trial. 1. Because of the misconduct of the jury in agreeing upon their verdict. 2. Because the damages are excessive. 3. Because of the error of the court in admitting the deposition of Clinton Walworth. 4. Because of misdirection of the court on the question of damages ; and 5. Because of irregularity in impanneling the jury.

This motion was accompanied by several affidavits. James B Alden deposed that he was the officer in charge of the jury ; that their first step after retiring was to mark down on paper severally the amount that the verdict ought to be, varying from $400

Birchard vs. Booth.

or $500 to $5,000. It was then suggested to them to divide the aggregate by twelve and see how much it would average, which was accordingly done, and the result was $2,416 8-12. After discussing the matter an hour or more, it was again proposed to ballot; they did so, and the result thereof was the large paper marked B (lost, but the result understood to be larger than before). Several of the jury refused to agree to this result. It was then proposed that the amount found by the first ballot after the division by twelve, deducting the $16, leaving $2,400, should be adopted as their verdict, which was fully agreed to.

Peter Yates deposed to certain statements made in a bar-room by one Sawyer, one of the jurors, as to the manner in which the verdict was found.

Matthew H. Carpenter deposed that it was his strong impression that the jurors were drawn from ballots upon the clerk's table.

John Nichols deposed that it was his strong impression that the jurors' names were drawn from a hat.

Six of the jurors deposed that their verdict was the result of full and fair deliberation ; that there was no agreement or understanding that their verdict should be the result of each one marking the amount of damages, and dividing the sum of such amounts by twelve; that the figuring on the two slips of paper mentioned in Alden's affidavit, were made out of curiosity, and did not in any manner affect their verdict.

After argument the motion for a new trial was overruled, and the defendant excepted. Judgment was thereupon entered upon the verdict, to reverse which this writ of error was sued out.

*Ryan & Yates*, for the plaintiff in error.

*Paine & Sons*, for the defendant in error.

*By the Court*, COLE, J. After having carefully examined all the points made by the counsel for the plaintiff in error, in this cause, we are unable to find any sufficient ground for reversing the judgment of the court below. Justice Walworth's testimony was competent, and properly introduced. It showed the admission of the plaintiff in error of a fact, the establishment of which

became very material upon the trial of the cause. As a general rule, the admissions of a party are admissible in evidence against him. But it is contended that these admissions or declarations of the plaintiff in error, in the police court, in reality amounted to nothing more than a plea of *nolo contendere*, and therefore should have been excluded from the consideration of the jury, by a well-settled rule of criminal law. We agree, however, with the circuit judge, that the admissions of the plaintiff in error in the police court were something more than an implied confession, which is what the plea of *nolo contendere* is defined to be. The police justice says:

"When Mr. Birchard was brought to my office on the warrant, he said, 'I am here, what do you want of me?' I then read to him the substance of the complaint; Mr. Birchard said, 'that is all true, I did it, there is no use denying it.' I then remarked in substance to Mr. Birchard, am I to understand you as pleading guilty? His reply was, 'Yes, I did it, there is no use denying it. How much is to pay? What is the bill?' and like inquiries." Now, what is a plea of *nolo contendere?* Putnam, J., in delivering the opinion of the court in the case of the *Commonwealth vs. James Harton* (9 *Pick.* 206), says: "The plea of *nolo contendere* is an implied confession of the offence charged. It is discretionary with the court to receive it or not." In 1 *Chit. Crim. Law*, 430, it is spoken of as follows: "An implied confession is when, in a case not capital, a defendant does not directly own himself to be guilty, but tacitly admits it by throwing himself upon the king's mercy, and desiring to submit to a small fine, which the court may either accept or decline as they think proper. If they grant the request, an entry is made to this effect, that the defendant *non vult contendere cum domina regina et ponit se in gratiam curiæ*, without compelling him to a more direct confession." Is there not a most palpable distinction between the case of an implied confession, as above defined, and the confessions of the plaintiff in error, as detailed by Walworth? In the latter case the party makes a frank, manly confession of what he had done, in the other he throws himself upon the king's mercy and submits to a fine. It is very hard to understand upon what ground these confessions of the plaintiff in error, in the police court, can be objected to, and excluded from the consideration of the jury,

unless we go to the extent of saying that no confession of guilt in a criminal case shall be admissible as evidence in a civil proceeding (1 *Greenlf. Ev.* § 537, *and note;* 1 *Stark's Ev.* 279). The circuit judge was exceedingly cautious in not admitting the complaint to be read to the jury, which might, perhaps, have rendered the confessions more intelligible; but certainly the plaintiff in error has no reason to complain of that ruling of the court. It was decidedly favorable to him to exclude that complaint, and let the confession go to the jury, in the absence of it, for what it was worth.

This suit was commenced on the 27th of April, 1854, the day the assault complained of was committed. The declaration was filed on the 12th of May following, and contained two counts. In the first, it is alleged that the plaintiff in error assaulted the defendant in error, and with his fists and a certain stick, struck him a great many violent blows and strokes on and about his head, face, breast, back, shoulders, &c., and with great force and violence shook and pulled the defendant in error, and threw him upon the floor, and struck him a great many other blows, by means of which the defendant in error was greatly hurt, bruised and wounded, and became sick, sore, and lame, and continued so for some time, and suffered and underwent pain, and was hindered and prevented from attending to his business, and was put to great expense in being cured of his wounds and sickness, &c. The second count was more general, alleging a beating, bruising, wounding and ill treating with *alia enormia.* On the trial, considerable testimony was introduced, showing the condition of the defendant in error for some days after the assault; that he was sick, and suffered great pain, and also that the lower part of the left shoulder-blade was fractured. This testimony was objected to, upon the ground that it went to show damages sustained, or injuries suffered, after the commencement of the suit, which were not the necessary, certain, fixed and inseparable consequences of the act complained of, and no recovery could be had for them, since they had not been specially alleged in the declaration. As a question of pleading, we are not prepared to say that the sickness of the defendant in error, and the injury to the shoulder-blade, are not stated in the declaration with sufficient particularity. Chitty says (1 *Plead.* 371), "Such dam-

ages as may be presumed necessarily to result from the breach of contract, need not be stated with any great particularity in the declaration."

· " The damages sustained are matter of evidence, and need not be alleged ; nor are they scarcely ever stated, but in a general manner," says Justice Spencer, in the case of *Barruso vs. Madoce*, 2 *C. R.* 149. *See Armstrong vs. Percy*, 5 *Wend.* 535–538. Here it is alleged that the defendant in error was greatly hurt, bruised, wounded, and became sick, &c.,—general averments, it is true, but sufficient to admit all matters which are the legal and natural consequences of the tortious act. "A plaintiff, under the usual allegation of assault and battery, may give evidence of any damages naturally and necessarily resulting from the act complained of." 2 *Greenl. Ev.* § 89. Were not the sickness, pain, and injury to the shoulder, the natural, necessary and fixed consequences of the battery ? Did they not succeed in the order of things, as necessarily as the effect follows the cause ? We acknowledge the soundness of the rule laid down by Chitty (1 *Plead.* 428), "That whenever the damages sustained have not necessarily accrued from the act complained of, and consequently are not implied by law, then, in order to prevent the surprise on the defendant which might otherwise ensue on the trial, the plaintiff must, in general, state the particular damage which he has sustained, or he will not be permitted to give evidence of it." But every man is presumed to anticipate the consequences of his own acts, and must come prepared to meet them, even if they are not specially set forth. And where an injury results which the law does not imply as the natural and necessary consequences of the assault and battery, and which are matters in aggravation, evidence of them cannot be given unless they are stated upon the record. The illustrations given of this rule are familiar, as, for instance, in an action for trespass and false imprisonment, damages for the general loss of health, or the contracting of a contagious disease, or being stinted in the allowance of food, or injury to clothes, &c., must be particularly averred. 2 *Greenl. Ev.* § 89 ; 1 *Chitt. Plead.* 428. It was contended on the argument, that the fracture of the shoulder-blade should have been specially and circumstantially set forth, in order to apprize the defendant of the fact to be proved ; and that it was a sur-

prise upon him to admit proof of it, under the general language of wounding, beating, bruising, &c.; and although we think such a special statement of the injury might have been very proper, yet we cannot say that it was essentially necessary. As already stated, we can but view that injury as the natural and necessary result or consequence of the battery. That wrongful act was the efficient producing cause of the fracture and loss of health, and we think it sufficient to allege it in this general manner. 17 *Wend.* 71; 11 *Pick.* 379.

Again, it is further to be observed, " That the plaintiff is at liberty to prove, and the jury are bound to take into consideration, those direct and immediate consequences of the act complained of, which are so closely connected with it that they would not, of themselves, furnish a distinct cause of action." *Sedgwick on Damages*, 104. And in *Felter vs. Beal*, 1 *Ld. Raym. R.* 339, it is decided that the plaintiff, in an action of assault and battery, might recover for the damage he is likely to sustain after the trial, as the natural consequences of the injury. In this case, we do not think there was any error in admitting evidence of damage subsequent to the commencement of the suit. 2 *Greenl. Ev.* § 268; *Dickinson vs. Bayle*, 17 *Pick.* 78.

A reconsideration of the case of *Mc Williams vs. Bragg*, recently decided by the court, has been strongly pressed upon us in the argument of this cause. That case recognizes the doctrine of punitory or exemplary damages. We have reviewed the principle upon which that case rests, and concluded to abide by it. Although the soundness of that principle has been vigorously assailed, we do not propose to enter into an examination of the authorities, or to attempt to fortify the reasoning by which it is sustained. And it seems to be a fair corollary of the principle of that case, that testimony of the wealth of the. defendant may be given in evidence. We do not see upon what ground it can be excluded, unless we repudiate entirely the doctrine of vindictive or exemplary damages. These observations, in the main, dispose of the third and fourth points made by the plaintiff in error.

There is one part of the charge of the circuit judge objected to, which requires, perhaps, a more particular notice. It is not entirely free from difficulty, and is in direct conflict with some

observations made by Justice Story in delivering judgment in the case of *Cushman vs. Ryan* (1 *Story*, 100). The part of the charge alluded to is as follows:

"But if, on the other hand, you find that the plaintiff was doing no more than under the circumstances attending the assault was reasonably necessary for his own defence, you will find the defendant responsible for all the injuries received by the plaintiff in the course of the affray, and the plaintiff is entitled to recover a *fair compensation* for all the losses and injuries which he has actually sustained, *whatever provocation* may have preceded the assault and battery."

Justice Story says in the case just referred to, that—"It is well settled that no words of provocation whatever will justify the offended party in inflicting a blow upon the offender, although certainly they may constitute an excuse which will mitigate the damages even down to the point of reducing them to mere *nominal damages*, if the language of provocation be very gross and reprehensible, and calculated from the circumstances to draw forth strong resentment." That opprobrious language used by the plaintiff, *at the time of the battery*, may be given in evidence in mitigation of damages, certainly seems to be well settled. *Rochester vs. Anderson*, 1 *Bibb*, 428; *McAlexander vs. Harris*, 6 *Munf.* 465; *Avery vs. Ray*, 1 *Mass.* 12; *Lee vs. Woolsey*, 19 *J. R.* 319; *Maynard vs. Beardsley*, 7 *Wend.* 560; but we have not been able to find any case going to the extent of saying, that it will reduce them below *compensatory* to merely *nominal* damages. Any expressions of so eminent a judge as Story are entitled to high respect, but we are not prepared to recognize and adopt the doctrine here advanced as sound law. Will mitigating circumstances reduce the damages below actual loss; to nominal in contradistinction to compensatory damages? Or is not the plaintiff in actions of assault and battery entitled to receive compensation for the actual injuries sustained, unless he has given the defendant a provocation amounting in law to a legal justification? We are inclined to the opinion that he is. The following language of the Supreme Court of Pennsylvania in the case of *McBride vs. McLaughlin*, 5 *Watts.* 375, has some bearing upon the point:

"In trespass, the *quo animo* is certainly not material to the

question of liability, nor is it so even to the quantum of damages in order to bring it below the actual injury. The common law rejects the compromising principle of the civil law, which divides the loss betwixt parties equally blameless, and acts on a sterner, but more exact rule of justice, by casting the whole on him who occasioned it, and requiring him to bear the consequences of his own acts and his own mischances. But though mitigant circumstances may not reduce the compensation below *actual loss*, may not circumstances of aggravation be suffered to enhance it?"

In the case under consideration, there can be no doubt but the libels were not legal provocation of which the defendant could avail himself on the trial—*see cases in* 19 *J. R. and* 7 *Wend. just cited*—but even if they had been, we think the charge of the circuit judge as to the rule of damages correct.

We are not able to see error in overruling the motion for a new trial for any reason set forth in the motion. There does not seem to have been such an irregularity in drawing the jury as to vitiate the verdict. Undoubtedly correct practice requires that the names of jurors be drawn from a box, but in this case they were drawn from a hat, or from the table; it does not appear satisfactorily which method was used. The defendant made no objection at the time to this method of drawing the jury, nor does he show that his rights have been, in anywise, affected by it. The objection to the irregularity is therefore taken too late.

We do not see any ground for saying that the verdict in this case was a gambling one. The statement of the juror Sawyer in the hotel, even if it had been made under oath, could not be received to impeach the verdict. Could we believe that the verdict was the result of chance or hazard, we should at once set it aside. The affidavit of the officer Alden, who had charge of the jury, proves no such thing. It shows that each juror marked down what he thought the damages should be; that the several sums were added up, and divided by twelve; that they could not agree upon the result as their verdict; that after discussing the matter an hour, they repeated the operation, and could not then agree upon the result, for their verdict. "It was then proposed that the amount found by the first ballot, after the divi-

Birchard vs. Booth.

sion by twelve, throwing off $16, leaving it $2400, should be adopted as the verdict, which was fully agreed to." Does this testimony show that the verdict was one of chance, that the jury did not freely deliberate upon, agree and assent to the sum found in the verdict? Quite the contrary.

We are very free to confess that we should have been better satisfied with this verdict had the damages been less. They do seem quite disproportioned to the injury sustained. But the damages are not so excessive as to bear marks of passion, prejudice or corruption on the part of the jury, and we, therefore, decline interfering with the verdict, upon the ground of excessive damages.

Judgment of the court below affirmed with costs.