McAndrews v. Tippett.

---

JOHN McANDREWS, PLAINTIFF IN ERROR, v. RICHARD TIPPETT, DEFENDANT IN ERROR.

By agreement under seal, T. agreed, among other things, to sink shaft No. 4, on the Morris and Essex tunnel, &c., to drive the headings, and tunnel from the shaft to points where the headings should meet the headings driven from the other shafts, and to place all materials taken out of the shaft into cars at the mouth. M., the contractor with the railroad company in the construction of the tunnel, agreed to furnish as many cars as he could conveniently supply, and the track for the same, for removing materials from mouth of shaft—$4 per cubic yard to be paid for the sinking of the shaft, and $6 per cubic yard for the headings and tunnel. It was further agreed between said parties, that if T. did not drive the work to the satisfaction of the chief engineer, M. should have the right to enter upon and take possession of the works, and put on as many men as would insure the completion of the work.

M., having received notice from the chief engineer that the work was not driven to his satisfaction, forthwith notified T. of his intention to enter, &c., and did, shortly afterwards, enter and take possession of the work, and completed it, without the consent and against the will of T., who thereupon brought this action.

Evidence having been produced at the trial tending to prove bad faith on the part of M., the court charged the jury, that if the defendant, by unreasonably withholding cars from the plaintiff, caused the delay, or designedly embarrassed the plaintiff in his work, and procured the notice to be given merely to get possession, &c., and did so get posses-

sion, and get the plaintiff out of his employment, then the plaintiff should recover; that the clause as to furnishing cars did not mean that M. should furnish only such as might suit his whim, but as many as he could without inconvenience to himself, in meeting the reasonable demands of the work as a whole ; and that the plaintiff, if entitled to recover at all, was entitled to recover, as damages, all the profit that would have resulted to him from the work if he had been permitted to perform it according to the contract.  *Held*—

1. That there was no error in the charge.
2. That, although at common law and in this state, before the act of March 17th, 1855, an objection to the form of action might have been fatal, it was rightly held by the court below that the error was amendable.
3. That damages arising after suit brought might properly be allowed by the jury.

In error to the Supreme Court.

For the plaintiff in error, *Vanatta*, Attorney-General.

For the defendant in error, *John Linn*.

The opinion of the court was delivered by

WOODHULL, J.   The declaration in this case recites that, by a certain agreement between the plaintiff and the defendant, the plaintiff agreed to sink shaft No. 4, on the Morris and Essex tunnel, in the construction of which, the defendant below, McAndrews, was the contractor, at a point to be designated by the engineer in charge, from the surface of the rock to the bottom of the shaft, said shaft to be twenty feet by twenty-seven feet in size, and to drive the headings and tunnel from the shaft to the points where the headings might meet the headings driven from the other shafts, and to place all of the material taken out of the shaft into cars at the mouth, and to sink the shaft to a depth of twenty feet ; and that the defendant agreed, &c., to furnish as many cars as he could conveniently supply, and the track for the same, for removing material from the mouth of shafts, and to pay for the sinking of the shaft $4 per cubic yard, and for the headings and tunnel $6 per cubic yard ; and that it was further agreed that if the plaintiff did not drive the work to the satisfaction of the

chief engineer of the railroad company, the defendant should have the right to enter upon and take possession of the work, and put in as many men as would insure its completion, &c.

It is then averred that the plaintiff entered upon and was proceeding with the work, under the said contract, and was making large gains and profits thereby, when the defendant, before the completion thereof and during the temporary absence of the plaintiff, without any justifiable or lawful cause or excuse, entered into said shaft and tunnel and took and kept possession of the same, thereby depriving the plaintiff of the right and privilege of fulfilling said contract and of making all the gains and profits which he had a right to make, and would have made, in the execution of said work and completing said contract.

The defendant below pleaded the general issue, giving notice therewith, that on the trial of the cause he would offer in evidence a contract or agreement, under seal, between the plaintiff and defendant, and would prove that the plaintiff did not perform his work according to the requirements of that contract.

This contract thus referred to in the defendant's notice, bearing date September 10th, 1874, and sealed by the plaintiff and defendant respectively, was offered in evidence by the plaintiff as the agreement recited in his declaration.

Mr. Justice Knapp, in his charge to the jury, refers to the fact that the plaintiff had grounded his action, not directly upon the contract, but upon a duty collateral to the contract, the contract being regarded merely as inducement, and remarks that the pleadings in the case suggest the question whether the plaintiff was seeking redress through the proper form of action. The doubt implied in this remark was well founded.

The common law doctrine on this point, as stated by Mr. Chitty, is, that if the contract is laid as inducement only, case for an act in its nature a tort or injury, afterwards committed in breach of the contract, may often be adopted. But he says, further, that if there is a covenant or contract under

seal between the same parties, and directly relating to the matter in dispute, the action must, in general, be in covenant, and founded thereon.    The only exception referred to is in the case of a tenant committing waste, and who had expressly covenanted against it, the ground of the exception being, that the landlord, having, by special covenant, acquired a new remedy, did not thereby lose his old remedy by action of waste, or on the case in the nature of waste.    1 *Chit. Pl.* 154, 155, 160, 161 ; *Kinlyside* v. *Thornton et al.*, 2 *W. Black.* 1111.

At common law, therefore, and under the law of this state as it stood before the act of March 17th, 1855, an objection to the form of action adopted in this case, might have been urged with fatal effect.

It was rightly held, however, by the court below, that the case having been tried on its merits, an amendment might be made, if necessary, to frame the action and pleadings to the case made by the proofs.    The same doctrine will be applied by this court.

The greater part of the exceptions taken at the trial, relate to the construction of the contract of September 10th, 1874, and to the question as to the damages which the plaintiff might recover for its violation.

1. As to the true meaning and legal effect of the contract.

The clause which provides that "in case the said second party does not drive the work to the satisfaction of the chief engineer of the railroad company, then the said first party shall have the right to enter upon and take possession of the works, and put on as many men as will insure the completion of said work," was the subject of much discussion in this court and in the court below.

The case shows that the chief engineer had served on McAndrews this notice : "Shaft No. 4 must be put in a shape that will enable it to be driven with increased results.    Its past working has been entirely too unsatisfactory, and I direct you to make such changes as will insure its completion by March 1st, 1876."    It appears, also, that McAndrews

forthwith informed Tippett, the plaintiff below, of the re-
ceipt of that notice, adding these words: "You are, there-
fore, hereby notified that I shall, under our contract, enter
upon and take possession of work on said shaft on the 1st
day of May, 1875, at which time you will vacate the prem-
ises."

It was insisted, in the court below, on the part of the
defendant, that by the plaintiff's failure to drive the work to
the satisfaction of the engineer, he had, *ipso facto*, abso-
lutely forfeited his right to complete the contract, and that
the right had thereupon resulted to the defendant to enter
upon and take possession of the work, as he had done, and
to complete it independently of the plaintiff.

The answer to this, on the part of the plaintiff, was, in the
language of the court below, " that the delay of which the
engineer complained, was brought about by the defend-
ant's own default in previously interfering with, hindering,
or withholding from the plaintiff the requisite amount of
cars to do this work, and, therefore, was not in good faith ;
that he was doing that with a view of so delaying the plain-
tiff that the engineer should become dissatisfied, and then
authorize the defendant, under the terms of that contract, to
take such steps as would get back the possession of the work,
and give the defendant the profits which the plaintiff would
have been entitled to."

There being evidence tending to prove each of the particu-
lars embraced in the foregoing insistment of the plaintiff, the
court submitted to the jury these questions: 1. Was there
unreasonable delay ?   2. Did the defendant cause this delay ?

And the jury were thereupon charged that if there was
unreasonable delay in the work by the plaintiff, which called
for the intervention of the engineer, and such intervention
was made in good faith, and McAndrews acted on it in good
faith, and took possession of the work and finished it, the
plaintiff cannot recover. If there was no delay, or if the
defendant, by unreasonably withholding cars from the plain-
tiff, caused the delay, or, acting from indirect motives, the

defendant designedly embarrassed the plaintiff in his work, and procured the notice to be given merely to get possession of the work, and deprive the plaintiff of it, and did so get possession, and did get the plaintiff out of his employment, then the plaintiff should recover.

With respect to that clause of the contract which required McAndrews to furnish as many cars as he could conveniently supply, and the track for the same, for removing materials from the mouth of shafts, the court charged as follows: "The defendant, by the contract, is to furnish as many cars as he can conveniently supply, and the track for the same, for the removing the material from the mouth of the shaft. This does not mean that the defendant shall furnish only such cars as may suit his whim and pleasure, but it means that he will furnish all the cars that the exigencies of the situation will permit, without inconvenience to him in meeting the reasonable demands of the work as a whole."

The court below adopted, as it seems to me, the only rational interpretation of the contract in question.

To have held, according to the insistment of the defendant, that any delay occasioned by his own acts or omissions, could be made the ground for avoiding the contract against the will of the plaintiff, would have been to permit the defendant to take advantage of his own wrong.

2. It is insisted, in the next place, that the court below erred in ruling that the plaintiff was entitled to recover, by way of damages, any profit which he might have derived from the contract if he had completed it.

This position is not tenable. The cases cited in support of it—*Freeman* v. *Clute*, 3 *Barb.* 424, and *Coweta Falls Man. Co.* v. *Rogers*, 19 *Ga.* 416—do not sustain it. The profits claimed in this case, instead of being the merely speculative, conjectural and remote profits excluded by the cases referred to, are such as would naturally and probably have accrued to the plaintiff if he had been allowed to perform the contract, and might be ascertained with reasonable certainty from the contract price, the cost per cubic yard, the

rate at which the excavation had proceeded when not hindered by the defendant, and other facts disclosed by the testimony. They are within the rule adopted by the Supreme Court, and sanctioned by this court in the case of *Wolcott, Johnson & Co.,* v. *Mount,* 7 *Vroom* 262. The principles governing the allowance of profits by way of damages, were fully discussed in that case.

Mr. Justice Depue, in delivering the judgment of the Supreme Court, after referring to the restrictive rule which prevailed in the earlier English and American cases, both in actions of tort and on contracts, says :

" This abridgment of the power of courts to award compensation adequate to the injury suffered, has been removed in actions of tort. *  *  * A similar relaxation of this restrictive rule has been made, at least to a qualified extent, in actions on contracts; and loss of profits resulting naturally from the breach of the contract, has been allowed to enter into the damages recoverable, when the profits that might have been realized from the performance of the contract are capable of being estimated with a reasonable degree of certainty." He says, further, citing *Fox* v. *Harding,* 7 *Cush.* 516, and *Masterton* v. *Mayor of Brooklyn,* 7 *Hill* 61 : " On an executory contract, put an end to by the refusal of the one party to complete it, for such breach the other party may recover such profits as would have accrued to him as the direct and immediate result of the performance of the contract."

No distinction in principle is perceived between the cases cited approvingly by the Supreme Court, and the one now before us. From the result reached by the jury, under the instructions given them, it must be presumed that the contract in this case was, in legal effect, broken by the defendant, and the plaintiff must be entitled, under the rule stated, to recover as damages, such profits as would have resulted directly and immediately from the performance of the contract.

This was, in substance, the rule adopted by the court below.

The exceptions relating to the interpretation of the contract in question, and to the rule as to damages recoverable for its violation, are not sustained.

It was further insisted on the part of the defendant below, that no damages arising after suit brought, could be allowed by the jury.

In *Richard* v. *Booth,* 4 *Wis.* 67, it was held that, in an action for assault and battery, the plaintiff may recover for damages arising after the commencement of the suit, provided they are the direct and natural consequences of the battery.

And in *Hopkins* v. *Atlantic and St. Lawrence Railroad,* 36 *N. Hamp.* 9, in an action by a husband against a railway company for an injury to his wife, his expenses for her cure, incurred after the bringing of the suit, were allowed.

Mr. Sedgwick, citing these cases, says : "As a general proposition, it may be said that the plaintiff is at liberty to prove, and the jury are bound to take into consideration, those direct and immediate consequences of the act complained of, which are so closely connected with it that they would not, of themselves, furnish a distinct cause of action." *Sedg. on Dam.* 115, (4th ed.)

The instructions to the jury upon the point in question, were in accordance with the doctrine just stated, and were correct.

Finding no error in the record sent up in this case, my conclusion is, that the judgment of the Supreme Court should be affirmed, with costs.

*For affirmance*—The CHANCELLOR, CHIEF JUSTICE, DALRIMPLE, DEPUE, DIXON, REED, SCUDDER, VAN SYCKEL, CLEMENT, DODD, GREEN, LATHROP, LILLY, WALES. 14.

*For reversal*—None.