725
31....65

·JOHN E. COWLES, and JOHN RUSSELL, Plaintiffs in Error,

*vs.*

BENJAMIN McVICKAR, Defendant in Error.

ERROR TO THE MILWAUKEE CIRCUIT COURT.

The legal effect of the contract of endorsement of a promissory note is, to create between the endorsor and endorsee, the relation of drawer and payee of a bill of exchange.

A sale of a bill of exchange or note, may be made for less than its face, without taint of usury; provided it be made in good faith, and without design to evade the law.

The endorsement or guaranty of a bill or note, by which the party renders himself liable for its payment, is incompatible with a simple sale.

The simple sale of a bill or note for less than its face, is not in itself usurious ; but if the vendor endorses, or guarantees, or otherwise becomes liable for its payment, the transaction is usurious.

Upon the *bona fide* sale of a bill or note, though for less than its face, the vendor may endorse it in order to pass the title, but in such case he does not become liable for its payment.

When a person transfers a note for a sum less than its face and legal interest and endorses or guarantees, or otherwise becomes liable, for its payment, it is a transaction by which the endorsee gets more than the legal rate of interest, and as *between the immediate parties to the contract of indorsement* is usurious.

A contract of endorsement, though it might be usurious between the immediate parties, may be valid to pass the title, as against the maker.

This was an action of assumpsit, tried in the Circuit Court of Milwaukee county, brought by the plaintiffs in error against the defendant in error as endorsor of two promissory notes for $250 each. The defendant pleaded the general issue, and in addition set up the defence of usury.

On the trial it appeared that one Samuel Gardiner, Jr., on the first day of April, 1850, executed his two

June Term
1854.

Cowles
et al.
vs.
McVickar.

promissory notes to Benjamin McVickar, the defend-
ant, which are as follows :

$250                        Milwaukee, April 1st, 1850.

Nine months after date, I promise to pay Benjamin
McVickar, or order, at Merrick & Townsend's office,
in Milwaukee, two hundred and fifty dollars, for value
received, with interest from date, at the rate of thirty
per cent. per annum until paid, if paid at the maturi-
ty hereof; but with interest from date at the rate of
fifty per cent. per anuum, if not paid at the maturity
hereof.

[Signed]            SAMUEL GARDINER, Jr.

The other note is an exact copy of the above, ex-
cept that it is payable eleven months from date in-
stead of nine.    That as collateral security to the notes,
Gardiner gave McVickar a chattel mortgage, and as-
signed to him a lease and two policies of insurance.
That on the 31st of October, 1851, McVickar assign-
ed and transferred said notes and collaterals to the
plaintiffs, and endorsed both the notes in the follow-
ing words :

Pay to the order of John E. Cowles and John
Russell.        [Signed]        BENJ. McVICKAR.

That the consideration of such assignment and en-
dorsement was the payment of $550 by plaintiffs to
defendant.    There was also evidence going to show a
demand of payment by the maker, and notice to the
endorser of the notes.

The plaintiffs claimed that they were entitled to
judgment against the defendant for the consideration
paid him for the notes, &c., to wit: $550, with legal
interest from the date of the payment thereof by
plaintiffs.

Upon these facts the judge charged the jury among

other things, especially in regard to the defence of

usury which had been interposed, to which the plaintiffs' counsel excepted. The jury returned a verdict in favor of the defendant, upon which final judgment was rendered.

The charge of the court below is given at length in the opinion of the court.

J. *Stark*, for the plaintiff in error.

Jas. S. *Brown*, for the defendant in error.

*By the Court*, SMITH, J. The charge of the Circuit Court, to which exceptions are taken, and which are alleged for error, sets forth clearly and fully the facts, disclosed by the bill of exceptions, and is as follows:

"This action is brought to recover the sum of $550 which the plaintiffs, Cowles and Russell, paid to the defendant, McVickar, for two promissory notes, and the collateral securities connected therewith. The right of action arises, if at all, upon the endorsement of the notes, made at the time of parting with them to the plaintiffs.

"The plaintiffs have produced the notes in evidence, with the endorsements of the defendant upon them, and it appears in proof that a lease, a chattel mortgage, and a policy of insurance were held by the defendant, as collateral security to the notes, and that these instruments were all assigned and transferred to the plaintiffs with the notes, and for the same consideration, to wit: the payment to the defendant of five hundred and fifty dollars.

"It further appears that the notes were past due at the time they were transferred; that the transfer took place on the 31st day of October, 1852; that on

June Term 1854.

Cowles et al.
vs.
McVickar.

the 11th day of November thereafter, the plaintiff demanded payment of the notes from Samuel Gardiner, Jr., the maker ; that payment was refused, and notice thereof was given to the defendant, within three or four days after the demand, and that the plaintiffs looked to him for the payment of the notes, but would receive back what they had paid to him. About these facts there is no dispute between the parties. * * * * *

"Several objections were raised by the defendant against any recovery by the plaintiff on the case here presented. First, the defendant contends, that in putting his name upon the back of the notes, he intended merely to pass his interest, as a matter of form, to the purchasers, and not to bind himself as endorser. This is not a question of law, but matter of fact for you to find. The endorsement, in form, is good in law to bind the defendant as endorser. But if it was not so intended by the parties at the time, it should be construed as a mere form of passing his interest, and would not make the defendant liable in this suit. You will look at all the facts in the case, and determine what the intention was. The endorsement is *prima facie* evidence of an intention to make the defendant liable as an endorser, and must be so construed unless the proof shows you that there was a different intention.

"Again, the defendant contends, that if the endorsement was so made as to bind the defendant as endorser, then the transaction between him and the plaintiffs was usurious, and that no action can be founded upon it. I have once passed upon this point, in a former suit between these parties, and I now see no sufficient reason to change my decision. The endorse-

ments of the notes carried to the plaintiffs the right

to collect from Gardiner, or from the collateral securities, the full amount of the face of the notes, which was more than five hundred and fifty dollars, the sum paid to the defendant, and if they should fail to collect this larger sum, then they had the right, by the contract, to recover from the defendant, the actual amount paid to him, with seven per cent. interest The transaction was, in this view of the endorsement, in my opinion usurious, and a violation of the law existing at the time it took place, and no recovery can be had against the defendant, as endorser of the note, for these reasons."

At the suggestion of counsel, the judge here sus pended his charge, and did not instruct the jury up on the other points in the case. The cause was there upon given to the jury under the foregoing instructions, who returned a verdict in favor of the defendant, upon which judgment was rendered accordingly.

The only question submitted for the consideration of this court, arises out of the exception taken to the charge of the court below, in relation to the usurious character of the contract of endorsement.

It will be recollected, that the statute at the date of the notes, April 1, 1850, permitted any rate of interest, which might be agreed upon by the parties, and fixed the rate at seven per cent. per annum, in cases where the contract was silent, as to the rate, or where it was implied or allowed by law. But previous to the transfer of the notes, the law was changed. The act of the legislature, approved March 10, 1851, entitled " an act to limit the rate of interest," was in force, at the time of the endorsement of the notes by

June Term
1854.

Cowles
et al.
vs.
McVickar.

the defendant to the plaintiffs. That act provides among other things as follows:

"Sec. 4. All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatever (except bottomry and respondentia bonds and contracts) and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved, or taken, or secured, or agreed to be reserved or taken any greater sum or value for the loan or forbearance of any money, goods or other things in action than is above prescribed, shall be void," &c.

The sum prescribed, to which reference is made in the above section, is twelve per cent. per annum. If, therefore, this contract of endorsement was in the nature of a contract, for a loan or forbearance of money, then it comes within the purview of the act of 1851, and the instructions of the circuit judge to the jury were correct.

The legal effect of the endorsement in these cases was, to create, as between the endorser and endorsee, the relation of drawer and payee of a bill of exchange. *Chitty on Bills*, 242, *and Notes*.

The amount legally due upon these notes at the time of the transfer, was considerably more than $550, even admitting that they drew but seven per cent. after maturity. They were past due when transferred. If, therefore, at the time of transfer, the defendant had drawn a bill of exchange, in favor of the plaintiffs for the amount of the notes, and had received therefor of the plaintiffs only the sum of $550; can any one doubt that such transaction would have been usurious? A sale of a bill or note may be made for less than its face, without taint of usury, provided it be in good faith, and without design to evade the law. But in

June Term
1854.

Cowles
et al.
vs.
McVickar.

such case the vendor of the bill or note does not make himself liable for its ultimate payment. The endorsement or guaranty of a bill or note, by which the party renders himself liable for its payment, is incompatible with a simple sale. It is a contract essentially different from that of bargain and sale. And herein is the distinction clearly perceptible and well established. The simple sale of a note or bill for less than its face is not in itself usurious. But if the vendor endorses, or guarantees, or othewise becomes liable for the payment of the bill or note, the transaction is usurious. The bill or note may be of doubtful character, and its value a fair subject of calculation; but when the vendor endorses it, or guarantees its payment, and thereby makes himself liable, he then fixes its value (as between him and the vendee) at its face, and there is no room for difference of opinion, or the exercise of skill and judgment. If the transaction between the plaintiffs and defendant was a mere sale of the notes, for their market or estimated value, why seek to hold the defendant liable on his contract of endorsement? The only purpose which the endorsement could serve in such a transaction, would be to pass the legal title to the plaintiffs. If the contract was merely one of bargain and sale, the passing of title was all that was requisite. If it was not one of mere bargain and sale, but a contract of endorsement, its legal effect was, to create a different relation between the parties than that of vendor and vendee, viz: that of drawer and payee of a bill of exchange, and hence the amount of consideration received, and the amount stipulated to be paid or secured, are such that mere computation brings the transaction within the usury act of 1851.

JUNE TERM
1854.

Cowles
et al.
vs.
McVickar.

It will not be necessary to refer in detail to the authorities in support of the position here assumed. It is believed they are uniformly, either directly or indirectly, in harmony with it, down to the case of *Cram vs. Hendricks,* 7 *Wend.,* 568, and are ably collated and reviewed by Chancellor Walworth in the opinion delivered by him in that case. They are cited by him, from elementary writers, and from the reported adjudications in England, and most of the States of the Union, and though the majority of the court of errors differed from his opinion, yet the doctrine established by the cases there cited was not, in our judgment, thereby overthrown. A note or bill may be sold in the market for less than its value ; and the payee may endorse the note so as to pass the title. Such a transaction would not necessarily be usurious. But the endorser in such case would not be liable for the payment of the note. This transaction would be a sale, nothing more nor less, and the endorsee might, if the endorsement were in blank, fill it up without recourse, and recover of the maker. But where a note is transferred by the payee, and endorsed by him in the usual manner, or the payment guaranteed by him, in consideration of a certain sum paid or advanced by the endorsee, the transaction is essentially a loan. It is the same as though the endorser or guarantor had given his own note. He becomes liable for the re-payment of the money at all events. If I raise money by the sale of a horse, I do not become liable for the re-payment of the money. So, if I raise money by the sale of a note. But if I raise money by giving my own note for its re-payment, or the note of another person and guarantee its payment, the transaction is a loan. It is said that I may sell a

horse worth one hundred dollars, for eighty dollars,
and agree to re-purchase the horse in one year, in as
good condition, for eighty dollars and seven per cent.
interest, and this would not be usury; and upon the
same principle one may sell a note for less than its
face, and agree to pay back the amount received for
it, with seven per cent. interest, without incurring the
penalty of usury. But such is not the contract of en-
dorsement. The latter has a definite character well
known to the law, which is to pay the *amount of the
note* at maturity, in case of non-payment by the maker
and notice of dishonor.

When a person transfers a note for a sum less than
its face and legal interest, and endorses, or guarantees
or otherwise becomes liable for its payment, it is a
transaction by which the endorsee gets more than the
legal rate of interest, and is therefore, *as between the
immediate parties to the contract of endorsement, usu-
rious.* This in no wise conflicts with the doctrine
contained in the other branch of the charge of the
circuit judge; nor with that of the cases cited which
hold that if the note or bill be valid in its inception,
no after usurious transactions will invalidate it,
though many of the earlier English, and some Amer-
ican cases have held the contrary. Some of the au-
thorities are here cited without attempting to give in
detail their import, nor to comment upon them.
*Massa vs. Darling,* 2 *Strange,* 1243; *Parr vs. Elia-
son,* 1 *East,* 92; *Lowes vs. Mazerado,* 1 *Starkie,* 385;
2 *Poth. pt.* 6, *Ch.* 4, *Art.* 6, § 1; *Ex Parte Isbester,*
1 *Rose's Cas.* 23; *the King vs. Ridge,* 4 *Price R.,* 50;
*Chapman vs. Black,* 2 *Barn and Ald.* 589; *Wyatt
vs. Campbell,* 1 *Moody and Malk,* 88; *id.* 131; 1 *Man
and Ryl,* 204; *the Farmers and Mechanics Bank of*

*Georgetown, Pet. Rep.* 37 ; *Ruffin vs. Armstrong,* 2 *Hawk. Rep.* 411 (*N. C. Rep.*;) *Foltz vs. Mey,* 1 *Bay's R.* (*S. C.*) 486 ; 2 *McCord, S. R.,* 175 ; 3 *id.* 363 ; 4 *id.* 402 ; *Burt vs. Gwinn,* 4 *Har. & Johns.* 507 ; *Little vs. Hard, Harding,* 81 ; *Whiteworth vs. Adams,* 5 *Rand.* 33 ; *Churchill vs. Suitor,* 4 *Mass. R.* 162 ; *Knight vs. Putnam,* 3 *Pick.* 185. Also see 5 *Dowl & Ryl,* 116 ; 17 *Ves.* 46 ; 3 *Barn & Cress,* 273 ; 1 *Moody and Malk,* 411, and especially the case of *Cram vs. Hendricks,* 7 *Wend.* before recited, where the cases *pro* and *con* are collated in the several opinions therein pronounced.

We think, therefore, that the circuit judge was right in his instruction to the jury upon this point, as there was no attempt by the plaintiffs to show a case different from what appeared upon the face of the papers. We do not say that it may not have been competent for the plaintiffs to show that the transaction was a *bonà fide* sale of the note, and not an advance or loan of money, and that the endorsement was made merely to pass the title. But this would have also defeated their claim against the defendant.

We think also, that the judge was right in charging the jury that the effect of the endorsement, may be and was valid to pass the title to the plaintiffs and enable them to collect the notes from the maker, though it may have been usurious as between these parties. The contract of endorsement was another and different one from that of the maker. The notes were lawful in their inception, and because the law vitiated the contract of endorsement so far as the endorser is concerned, it does not operate to discharge the maker, whose liability is not in the least affected by the transaction. The contract, therefore, which

the court may be required to cancel on account of usury, is not the note itself, but the contract of endorsement, so far as it might operate to bind the endorser. (See authorities before cited.)

We are unable to perceive any error in the charge of the judge to which exceptions were taken, but on the contrary are of the opinion that they were strictly correct, and the verdict and judgment likewise correct.

The judgment of the court below is therefore affirmed, with costs.