# GEORGE E. H. DAY, Plaintiff in Error,

## *vs.*

# ELMORE AND ELMORE, Defendants in Error.

### ERROR TO MILWAUKEE COUNTY COURT.

Contracts of guaranty are usually of two kinds: 1, where the *payment*, and 2, where the *collection* of the note or debt is guarantied.

A guaranty of the payment of a note or debt, is an *absolute* undertaking on the part of the guarantor for a valuable consideration, to pay the debt at maturity, in case the principal debtor does not; and the guaranty in such case may sue the guarantor at once, if the debt is not paid at maturity.

The contract of guaranty for the *collection* of the debt, differs from the contract of guaranty of payment only in this, that the guarantor undertakes to pay the debt, upon the condition that the guaranty shall diligently prosecute the principal debtor without avail.

The consideration required to be expressed in the contract of guaranty, which must be in writing, need not state the sum actually received by the guarantor, and the words "for value received," are a sufficient expression of the consideration.

The time within which a guaranty for collection of a note or debt, is bound to proceed against the principal debtor, depends upon the circumstances of each individual case, but must be a reasonable one.

The question of due diligence may be a mixed question of law and fact.

Mere delay to prosecute on failure to pay at maturity, is not of itself sufficient to negative the use of due diligence, though it may be continued so long as to afford a presumption against its execution.

A delay or neglect to prosecute the principal for two years, and even a much shorter time, when the principal debtor is within the jurisdiction, without the consent of the guarantor, will discharge the latter.

A delay for any period, at the request or with the consent of the guarantor, will excuse such delay.

The consent on the part of the guarantor to the delay to sue the makers of the note, is a waiver of his right to the *immediate* performance of a condition on which he had a right to insist.

The guarantor can waive such right by parol.

A guarantor for the collection of a note, who had requested his guaranty to delay the prosecution of the principal debtor, and such request had been complied with, is estopped from setting up such delay to prosecute, as a defence to an action brought upon the contract of guaranty.

The words "for value received," in a contract of guaranty, is a sufficient expression of the consideration.

The liability of the guarantor is not limited to the amount of consideration received by him for the guaranty, but is co-extensive with the amount of the note guarantied.

Where the makers of a promissory note make and deliver to the original payee a chattel mortgage to secure the note, and the original payee guaranties and transfers the note, and assigns the chattel mortgage to the holders, the latter are not bound to proceed under the chattel mortgage after having prosecuted the makers to judgment and execution.

The guaranties were not required by the condition of the contract of guaranty, to foreclose the chattel mortgage; no request of the guarantor to that effect, can enlarge the scope of their duties beyond the terms which the law implies in all contracts of that kind.

THIS was an action of assumpsit brought upon a contract of guaranty for the collection of a promissory note, made by W. E. and E. P. Bassett to Hiram W. Frink and George E. H. Day, for the payment of $320, with interest from date at 25 per centum per annum until paid, payable within one year, and dated March 3, 1851.

The note was not paid at maturity by the makers or the guarantor.

At the _____ term of the County Court, for the county of Milwaukee, suit was brought by the defendants in error, against the plaintiff in error, upon the said contract of guaranty, and judgment recovered by them for damages and costs, to reverse which judgment the present writ of error is brought.

On the trial of this cause before the court below, it appeared in evidence, that on the 7th day of November, 1851, Day, one of the original payees of the note, transferred the same to the defendants in error, and then and there guarantied the collection thereof, in these words:

"I guaranty the collection of the within note for value received, November 7, 1851," signed by the guarantor.

This note was secured, or purported to be secured, by a chattel mortgage upon a certain frame building belonging to the said Bassetts, executed by them to Frink and Day, and bearing even date with the said note, which said chattel mortgage was at the same time, assigned by Day to the defendants in error; that said note remained unpaid at maturity, in the month of March, 1852. It further appeared that the defendants in error, at the request of Day, delayed the collection of the note from the makers until the month of May, 1854, when judgment was entered upon the said note, on the 17th day of May, of that year, in favor of the defendants in error.

The plaintiffs below further proved, that an execution issued upon the said judgment, dated May 21, 1854, and that by order of the court, the said execution was made returnable within four days from its date; that the execution was returned within two days after its date, "no *property* found whereon to levy," indorsed thereon by the officer.

Such of the points insisted upon by the plaintiff in error, as are noticed by the court in their opinion delivered in this cause, are as follows:

1. The contract of guaranty of the defendant below, did not sufficiently express *the consideration* as the statute of frauds requires, by simply stating " for value received."

2. A guarantor is liable only to the extent of the obligation assumed by him, that is to say, in case of a bill of exchange or note, not the *face* thereof, but only the amount he actually received, and interest, for which reason it is necessary to express the amount of consideration received by the guarantor.

3. The contract of guaranty being an undertaking to answer for the debt of another, and as such, being required by the statute of frauds to be reduced to writing, cannot be altered or varied by parol, therefore the alleged excuse for the delaying the collection of the note on the part of the holders, after maturity, that it was delayed " at the instance and request of the defendant below," such consent not being in writing, it is insufficient and not admissible, and the guarantor was consequently discharged from his liability.

4. The plaintiffs below must first endeavor to collect the note by foreclosing the chattel mortgage executed by the makers, and assigned to the plaintiffs by the defendant below, before the right of action against the defendant below accrued to them.

5. The execution issued and returned within two days after its date, although it appeared that the execution was made returnable by an order of court, was not proof of due legal diligence against the defendant therein.

The points made by the defendants in error are sufficiently adverted to in the opinion of the court.

*Peter Yates*, for plaintiff in error.

Day vs. Elmore and Elmore.

*O. H. Waldo*, for defendants in error.

*By the Court*, SMITH, J. This is an action of assumpsit brought by the defendants in error upon a contract of guaranty, upon a promissory note made by W. E. and E. P. Bassett, payable to George E. H. Day and Hiram W. Fink or order. The guaranty is in the following words:

"I guaranty the collection of the within note for value received, November 7, 1851," signed by the plaintiff in error.

This case, in most of its essential features, is like that of *Day against Bates*, decided at a former term. The opinion prepared in that case delayed at the request of counsel in this, in order that he might have an opportunity of further discussing the points raised, most of which are alike in both cases, and on which he bases his right to a judgment in his favor.

We shall not review all of the points made here, nor observe the order in which they are presented, but propose to discuss one or two which seem to be the foundation on which the whole argument rests.

The contract of guaranty has occupied the attention of courts in this country to a considerable extent, both because it is usually sought to bring such contracts within the statute of frauds, itself a frightful source of litigation, and because they are of frequent occurrence in the business transactions of the country; and it is not surprising that upon some of the many questions to which they have given rise, a diversity of opinion and judgment has obtained.

These contracts are usually of one of two kinds, viz: where *payment* of the note or debt is guarantied; or, 2, where the collection of the note or debt is guarantied. Sometimes, indeed, the performance of a contract, other than for the payment of money, is thus assured, but not frequently. A guaranty of the payment of a note or debt, is an absolute undertaking on the part of the guarantor for a valuable consideration, to pay the debt at maturity, in case the principal debtor does not. The guaranty may sue the guarantor at once, if the debt is not paid at maturity. The contract of guaranty for the collection of the debt differs from the former only in this, that the guarantor undertakes to pay the debt, upon the condition that the guaranty

shall diligently prosecute the principal debtor without avail. In other words, that he shall use the ordinary legal means to col- lect the debt of the principal, diligently, and without success. In both, the contract must be in writing, and the consideration must be expressed in compliance with the statute of frauds, for it is an agreement to answer for the debt or default of another. Both are conditional, but the guaranty of collection requires the positive affirmative action of the guaranty in the diligent en- deavor to collect the debt of the principal debtor. The law has defined the means which he shall use, and the extent to which they shall be employed; but the time when, and the circum- stances under which they shall be employed, may depend upon a variety of circumstances, which are to be taken into consider- ation in determining the question of due diligence, which is to be exercised in their employment. The legal means to be used are, the commencement and prosecution of a suit against the debtor, to judgment and execution. When the proper officer returns the execution unsatisfied, for want of goods or other property whereon to levy, the legal means are said to be ex- hausted. We do not here speak of the objection taken to the issue and return of the execution in this case, having only five days to run. We shall speak of that hereafter. Of course, all these means must be prosecuted diligently and *in good faith*, and in a manner not only warranted by law, but calculated to insure the end sought to be accomplished.

We have said that these means are to be used diligently. If the note is not paid at maturity, suit must be commenced within a reasonable time afterwards. The law does not fix any definite time within which suit must be commenced. This must de- pend upon all the circumstances of the case, and hence, what is due diligence, is a mixed question of law and fact. 4 *Cowen Rep.* 173 ; 11 *Wend. R.* 634 ; 5 *Barb. S. C. Rep.* 504 ; *Mass. R.* 187.

Mere delay to prosecute on failure to pay at maturity, is not, therefore, of itself, sufficient to negative the use of due diligence, though it may be continued so long as to afford a legal presump- tion against its exercise. The situation, condition, residence and other circumstances of the parties, may all be taken into account to excuse an immediate prosecution. And there can be no doubt that a delay for any period, at the request, or with the

consent of the guarantor, will excuse such delay. And there can be no doubt that a delay or neglect to prosecute the principal for two years, and even a much shorter term, when the original debtor is within the jurisdiction, without the consent of guarantor, will discharge the latter. Here, in this case, the delay of the guaranties to sue, is attempted to be excused on the ground that it was at the request, and with the assent of Day, the guarantor. This was a matter of fact, proper to be averred and proved, and for the jury, under the instructions of the court, from the evidence, to determine. It was submitted to the jury, and the bill of exceptions does not inform us under what instructions from the court. The correctness of the verdict in this behalf, is not submitted to our consideration, and we must presume that they found the fact of consent on the part of the guarantor to the delay.

- But it is contended, that although it is competent for the guarantor to authorize a delay in prosecuting the principal debtor, yet, as this is a new agreement extending the time of the guaranty, it is like the original guaranty, collateral, and must be in writing; and further, that as the original contract is in writing, it cannot be altered by parol. We do not perceive the force of these suggestions. The giving of Day, or forbearing to sue, was no new agreement with the makers of the note. No contract was made with them in such respect; nor was there any new agreement with Day. It was only a waiver on his part of the *immediate* performance of a condition on which he had a right to insist. He could waive that right by parol. The matter of delay in prosecution, or forbearance to sue, together with matters of excuse, are of frequent occurrence in the books, but this is the first time that we have heard or learned of its being urged, that such forbearance, at the request of the guarantor, was required to be in writing. Besides, it cannot but be apparent, upon the slightest reflection, that a guarantor who had requested his guaranty to delay the prosecution of the principal debtor, and such request had been complied with, would be estopped from setting up such defence to an action brought upon the contract of guaranty. To extend the purview of the statute of frauds, so as to embrace such transactions, would be to make it a statute for the promotion, encouragement and protection of

frauds, instead of a statute for the prevention of frauds. The case supposed by the counsel for the plaintiff in error, is in exact analogy with the class of cases to which the doctrine of estoppel is always applied.

It is also urged, that the words "for value received," used in this contract of guaranty, are not a sufficient expression of the consideration, as is required by the statute. If this was a new question, it would, in our judgment, be entitled to very great weight. But in quite a number of cases, it has been, either expressly decided that this mode of expressing the consideration is sufficient under statutes similar to our own, or such decisions have been impliedly approved. *Watson vs. McLaren,* 19 *Wend.* 557 ; *Douglass vs. Howard,* 24 *Wend.* 35 ; *Com. Bank vs. Norton,* 1 *Hill,* 501 ; *Marrow vs. Durham,* 3 *Hill,* 584; *Foler vs. Culver,* 3 *Hill,* 48 ; *Miller vs. Gaston,* 2 *id.* 188. And in a late case (*Brewster vs. Silence,* 4 *Selden*), the principle of these decisions is mentioned with approbation Although it must be confessed that these cases reduce the statutory requisitions of expressing the consideration to a mere formality, yet, we do not feel at liberty now to depart from them. The mischief of attempting to establish a new rule, would probably be much greater than that of a quiet acquiescence in the one already established, inasmuch as the latter may answer a liberal interpretation of the statute.

But it is contended by the plaintiff in error, that the true consideration ought to be expressed, for the reason that the guarantor can only be held for the sum or consideration which he received for his guaranty. We do not so understand the law of guaranty. It is true that this is the doctrine in many cases in New York of a certain class, and in *Coles vs. McVickar,* (3 *Wis. Rep.* 725,) we had occasion to examine those cases with attention, and felt ourselves unable to assent to the principles on which their decision was based. The contract of guaranty (of the kind of which we are now speaking), is to answer for the debt of another ; or, in other words, to pay the debt in case it is not collected of the principal debtor. Suppose I hold a note for $1,000, made by A., payable ninety days hence, and doubting the ability or disposition of A. to pay the note at maturity, I agree with B. that for the sum of ten dollars he shall guaranty the payment, and this contract is reduced to writing, is

there any wrong in requiring of B. the payment of the whole amount of the note, providing A. fails to pay the same? B. has, for a valuable consideration, voluntarily taken the risk of A.'s solvency and fidelity upon himself. If he fulfills his contract, and pays me the amount of the note, on A.'s failure to do so, he is entitled to be substituted in my place. The risk which before was mine, B. has assumed for an adequate consideration, and there would be no justice in holding that in case of A.'s failure to pay the note, I would be entitled to recover of B. only the sum paid him ($10), and interest. On the contrary he is bound by his contract to pay me the amount of the note, and then, in equity he would be entitled to take the note and abide his own fortune or energy in collecting it of the principal or maker. Such is simply the contract of guaranty. But owing to its frequent relation to business transactions which are regulated or modified by other statutes, such as of frauds, usury, &c., it has from time to time been differently construed to meet the equity of particular cases, or to avoid what appeared to be the hard exactions of the statute. These decisions we do not propose now to examine. It will suffice to say that the tendency now, as it is believed, is, to abide by the terms of the contract, and of the statute which prescribes the form of its expression.

It is also contended, that the defendants in error were bound not only to prosecute the Bassetts to insolvency, before they could require payment of Day, but were also bound to foreclose a chattel mortgage which was collateral security for the note, and assigned by Day at the time of the guaranty. We had occasion to examine this question in *Day vs. Bates*, and arrived at a different conclusion. The guaranty is for the *collection* of the note, and the law implies the rights and duties of the parties from these few, simple words. It imposes upon the guarantor the duty to pay the note, if the guaranty shall diligently, and without avail, employ the usual legal instrumentalities to collect it of the maker, and it imposes this condition upon the guaranty before he can call upon the guarantor. As the law implies this condition from the terms of the contract, it also defines the means which shall be employed, and to what extent they shall be employed in order to a fulfillment of the condition; that is to sue the maker at law within the proper time, and to diligently

prosecute the suit to judgment and execution.  The return of the execution by the proper officer, unsatisfied for want of property on which to levy, is *prima facie* evidence of the exhaustion of the legal means for collection.  This is all which the law implies from the use of the word " collection " in a guaranty of this kind.  The guaranty is not obliged to pursue rights, credits, &c., by collateral or unusual remedies.  If he has pursued the ordinary course of law, it is enough.  Then it is that the guarantor becomes bound to pay ; and by doing so, he is entitled to be substituted in the place of the guaranty, and to the use and control of all collateral agencies and securities.  If there be collateral security, he is entitled to it.  If there are equitable rights, or choses in action or credits which a court of equity would discover and subject to the satisfaction of the judgment, he is entitled to pursue them.  But the guaranty is not bound to pursue them before his right of action accrues against the guarantor.  There can be no doubt that the guaranty is bound to preserve such securities as may have been assigned to or deposited with him, and not to squander or destroy them, and to deliver them to the guarantor on the payment of the debt by him ; but he is not bound to pursue them, and simply because that is not any part of the condition which the law implies as attaching to the contract.  There may and often do occur cases in which a person will be decreed to seek satisfaction out of a specific fund, or to exhaust such fund before he shall be permitted to prosecute his personal action at law.  But such is not this case.  We are constrained to hold, therefore, that the defendants in error were not bound to pursue the chattel mortgage in any manner in order to preserve their right of action against the plaintiff in error.  That they were bound to exercise due diligence in prosecuting the makers of the note to judgment and execution.  That as the guaranties were not required by the condition of the contract to foreclose the chattel mortgage, no request of the guarantor to that effect could enlarge the scope of their duties beyond the terms which the law implies in all contracts of that kind.

It is further objected, that the execution issued in this case was made returnable in four days from its date.  The return day of the execution was fixed by order of the court.  This was lawful.  Although the officer could not within that time make

the money by levy and sale, yet there was sufficient time allowed to make a levy upon property if any could be found; and if property had been levied upon and thus returned, it would have been a bar to this action. The presumption must be that the return of the officer to the execution was true, viz: that there was no property of the defendants on which to levy, &c. These are *prima facie* evidence of due diligence, and there is no attempt to rebut it.

On a careful review of the whole case, we are unable to discover any error, and the judgment of the court below must, therefore, be affirmed.