SCHMIDT, an infant, etc., vs. THE MILWAUKEE AND ST. PAUL RAILWAY COMPANY.

RAILROAD COMPANY: *Liability for injury to persons from failure to erect fence — Negligence, in case of a young infant — Damages.*

1. Where an infant of eighteen months gets upon a railroad track in conse-quence of the failure of the railroad company to erect a fence as required by law, the parents being in the exercise of ordinary care, the company is liable to it for the injury.
2. An infant of that age is not itself capable in such a case of negligence that will defeat a recovery.
3. The infant in this case having lost its right arm, this court refuses to reverse for excessive damages a judgment on the verdict for $8,000.
DIXON, C. J., dissented from the first two propositions.

APPEAL from the County Court of *Milwaukee* County.

The plaintiff brought this action by his guardian *ad litem*, to recover for injuries to his person, in consequence of his being run over by a train on the defendant's track. The grounds of complaint and defense will sufficiently appear from the opinion. Verdict for the plaintiff for $8,000; a motion for a new trial (on the grounds of error in the refusal of the court to nonsuit the plaintiff, erroneous instructions, verdict contrary to law and the evidence, and excessive damages) was denied; and the defendant appealed from a judgment on the verdict.

*Jno. W. Cary*, for appellant, to the point that an infant suing for injuries received is bound to show himself free from negligence, and that, so far as the right of recovery is con-cerned, whatever would be negligence in an adult would be negligence in an infant, cited 21 Wend. 615; 14 Barb. 585; 8 Rich. 120; 1 E. D. Smith, 74; 4 Allen, 283. 2. Under the circumstances of this case something more than *ordinary* care was required of the parents, if the care exercised by them, and not that of the plaintiff himself, is to be considered; and the instructions given were erroneous in this respect. 3. The

verdict should have been set aside for excessive damages. 12 Barb. 492; 19 id. 461; 18 Ill. 460.

*Smith & Salomon*, for respondent:

The defendant's failure to fence was negligence. 20 Wis. 254, 259; 13 id. 637; 3 Kern. 42; 34 N. Y. 427; 20 Barb. 449; 39 Me. 273; 24 Vt. 488. Whenever a public duty is imposed on a person or company, the party suffering special damage from a breach of it has an action for such damage. Pierce on Am. R. R. Law, 246; Broom on Com. Law, 661–76; 16 Q. B. 610; 13 Wis. 637; 20 id. 254, 259; 39 Me. 273; 24 Vt. 488. It is sufficient that the existence of the fence would have tended to prevent the injury; we need not contend that it would have certainly prevented it. 20 Ill. 221, 226. What constitutes "ordinary care" depends upon the circumstances — the degree of danger created by known facts. 1 Allen, 9, 15; 4 id. 268, 276; 22 Vt. 213, 218, 224; 18 Wis. 74, 80; 26 Mo. 441, 447; 24 Vt. 487, 492; 10 Iowa, 268, 271; 34 N. Y. 404, 409; 22 id. 209, 212–14. 2. Though the plaintiff took the burden, at the trial, of satisfying the jury that there was no negligence on the part of his parents contributing to cause the injury, yet in fact is not bound in this respect by their conduct; his own negligence alone could defeat his right of action; and as it is impossible to predicate negligence of a child of his tender years, the only material question in the case is, whether defendant's negligence produced the injury. 1 Ad. & El. N. S. (1 Q. B.) 29; 22 Vt. 213; 19 Conn. 507; 26 id. 591; 31 Pa. St. 358, 370, 378; 48 id. 218; 47 id. 300, 304; Pierce on Am. R. R. Law, 282. But conceding the correctness of the doctrine of *Hartfield v. Roper*, 21 Wend. 615, and the other cases which make the plaintiff's cause of action depend on the carefulness of his guardians, a nonsuit was properly refused in this case. Where the facts are in dispute, or where the inference of negligence is to be drawn from a multitude of circumstances, the question must be determined by the jury. The court will not interfere

unless the facts are certain, few and decisive. 19 Wis. 489, 496; 17 id. 487, 492–96; id. 477, 484; 19 Conn. 566; 28 id. 264; 10 Iowa, 271; 35 N. Y. 9, 38–41, 46–48, and id. 75, 79, where some previous decisions in that state are condemned as "entirely at war with the well-settled doctrine of the common law." See also 4 Cush. 247; 41 N. H. 44; 42 id. 197, 215; 36 Barb. 230, 239. To the point that only ordinary care was required of the parents, and it was not sufficient to prevent a recovery that they *might* have been more diligent, counsel cited 18 Wis. 74; 17 id. 428, 432; 35 N. Y. 26; 31 Pa. St. 512; 26 Conn. 591, 597; 28 id. 264; 20 Ill. 478, and cases there cited; 4 Cush. 247; 11 East, 60; 41 N. H. 44, 50, 317; 42 id. 197, 215; 22 N. Y. 209, 215. And see especially *Mangam v. R. R. Co.*, 36 Barb. 230, 239.

COLE, J. The jury must have found, under the instructions of the court, that the parents of the child were free from fault or negligence in allowing the infant to stray upon the railroad track. For the court specifically instructed the jury, that if they found from the evidence that the injury to the plaintiff was caused by the neglect of the defendant or its agents, while the parents of the plaintiff were in the exercise of ordinary care in guarding the plaintiff, then they should find for the plaintiff. The same proposition is substantially embraced in other parts of the charge — that if the negligence of the parents, or of those whose duty it was to watch the infant, contributed to produce the injury, no recovery could be had. The jury were told that they must consider all the circumstances appearing in the evidence, in order to determine whether the parents had exercised ordinary care in guarding the child, or not; and this was undoubtedly correct. As was forcibly argued by the counsel for the plaintiff, in determining this question of negligence, the condition of the family, the season of the year, the place of the accident, the probability that it would happen, and all

the surrounding facts and circumstances, were proper matters to be considered by the jury; and they must have found from the whole evidence that the parents were free from fault or negligence.

Then, we think the ruling of the court below correct upon another proposition, which has been very elaborately discussed by counsel, that is, whether an infant of only eighteen months old must be judged by the same rule as an adult, when exposing himself to danger. In denying the motion for a nonsuit, the court evidently was of the opinion that negligence could not be predicated upon the conduct of an infant of that age. But the counsel for the company insists that this is an erroneous view of the law, and that the correct rule upon the subject is, when an infant brings suit for injuries received, that he is bound to show himself free from all negligence, or want of proper care, tending to produce the injury, the same as an adult. He argues and claims that all plaintiffs suing for such injuries stand upon the same ground, and are subjected to the same rules; and that, so far as the right of recovery is concerned, whatever would be negligence or want of proper care in an adult, is negligence or want of proper care in an infant. We are not prepared to yield our assent to the soundness of such a proposition, even though cases may be found which seem to sustain it. An infant of the age of eighteen months is utterly incapable of exercising any care or discretion in any matter whatever. He is incapable of comprehending the imminent danger of remaining on a railroad track when a train of cars is approaching. He is necessarily incapable of exercising any judgment or forethought, can neither apprehend the danger to which he is exposed, nor take suitable means to protect himself against it. Negligence cannot properly be imputed to him, since he knows nothing of care, or diligence, or danger. And to say that he is bound to the same legal rules in regard to the exercise of care and diligence in avoiding danger, and

escaping the consequences of neglect on the part of others, which are applied to persons of full age and capacity, seems to us a most unreasonable doctrine. Reason, principle and the weight of authority, we think, sanction a different rule. Most of these cases where this question is discussed, are cited on the brief of the counsel for the plaintiff; and we are content to refer to the reasonings in those cases upon the point we are considering. They fully vindicate both the soundness and humanity of the doctrine, that negligence cannot be imputed to the conduct of an infant of such tender years as the plaintiff, and that in respect to his acts he is not to be judged by the same rules which are applied to an adult. All that is demanded in such cases is, a degree of care or diligence equal to the capacity of the child. In addition to the authorities cited by counsel upon this point, see *Whirley v. Whiteman*, 1 Head (Tenn.) 610; and Angell on Highways, § 347. And this brings us to the point in the case which presents the greatest difficulty.

The child was, in the month of August, 1865, run over by a gravel train of the defendant, and lost his right arm in consequence of the injury so received. The railroad track ran across the farm of the plaintiff's father, some forty or forty-five rods from the dwelling-house. The road had been in operation a year or more, but the company had neglected to construct any fences along the line of its road at that point. The child was on the track where a path, leading from one part of his father's farm to the other, crossed the railroad. The plaintiff requested the court to give a number· of special instructions, the fourth, fifth and sixth of which were as follows:

" *Fourth.* The defendant was guilty of negligence in failing to fence its road across the land in question.

" *Fifth.* If the jury find from the evidence that the want of a fence was the cause of the injury, without negligence of plaintiff's parents contributing thereto, they must find for the plaintiff.

" *Sixth.* If the jury find from the evidence. that, owing to the want of a fence, this part of the road over the land in question was unsafe, and accidents more liable to occur there than where the road was fenced, and that the company had notice of this fact, then it was the duty of the defendant to use more than ordinary care and diligence to prevent such accidents, and to run their trains with reference to this consideration."

These instructions the court gave, under exceptions, and also gave, at the request of the defendant, this instruction: " That the plaintiff cannot recover for the negligence of the defendant in not building said fence, unless you find that the injury happened without the fault of the plaintiff and in conconsequence of the neglect to build the fence, and that the fence would have prevented it."

Now, considering these various instructions together, so far as they bear upon the question of the liability of the company arising from the fact that it had neglected to build a fence along the road at that place, they simply amount to this proposition : That though the defendant was guilty of negligence in failing to fence its road across the land in question, yet this fact would not authorize a recovery, unless the injury happened without the fault of the plaintiff's parents contributing thereto, and in consequence of the neglect to build the fence, and the fence would have prevented the accident.

Assuming, then, these facts to exist, as we must after the verdict—that the parents exercised ordinary care in protecting the child ; that the company neglected to build a fence along its road at that place, as the law required ; and that the child was injured in consequence of this neglect, the question arises, In such a case is not the company liable ?   The counsel for the company says that the failure to build a fence subjected the defendant to certain liabilities in case of an injury to cattle, horses, or other domestic animals ; and that in case of injury

to passengers, happening in consequence of not fencing the road, certain other liabilities would attach; but that fences were never intended to keep men, women or children off the track, and are utterly useless for any such purpose.

In answer to this argument, it must in the first place be remembered, that the statute imposes upon all railroad companies of this state the positive duty of erecting and maintaining good and sufficient fences on both sides of their roads, with gates or bars therein, and farm crossings for the use of the proprietors of the adjoining lands. This is a clear, distinct and precise legal duty imposed by the legislature; and the failure to perform it by the company in this case was the sole cause of the injury. For the jury in effect found, that a fence would have prevented the accident. The facts in this case show, that for more than a year the company had run its trains over the road, neglecting all the while to build a fence at that place — omitting to do what not only the law required, but common prudence demanded should be done, as well for the protection of persons traveling on its road as for the security of the domestic animals of those residing along the track, and the safety of children exposed to its dangers, who were incapable of taking care of themselves.

Now, when the company neglected to perform this duty, did it not necessarily assume responsibility for all damages which might result from that cause? Can the court make an exception to this general liability, when an infant is injured solely in consequence of the want of a fence, no negligence of the parents contributing thereto? Would it not be an unwarrantable restriction of the statute, to hold that the duty imposed upon the company of maintaining a fence along its road had no reference to such children? If one were to look at the mere verbiage of the last part of the first section (chapter 268, Laws of 1860,) he might conclude that the object of the law was solely for the protection of domestic animals. And yet the courts

have held that the law has a broader application, being in the nature of a police regulation, intended mainly to secure the safety of passengers upon railroad cars. *Blair v. The Mil. & Prairie du Chien R. R. Co.*, 20 Wis. 254, and cases there cited. Hence, where a passenger, without fault on his part, is injured in consequence of the cars being thrown from the track by cattle passing on to the same at a place where the company ought to maintain a fence, he can recover for all damages sustained, without other proof of the negligence of the company. And this recovery is had in such a case upon the ground that when the company neglects to perform a duty imposed by the statute, it "necessarily assumes responsibility for all damages which may ensue from that cause." Thus a liberal construction has already been placed upon the statute for the purpose of furthering the important and beneficial objects of its enactment. It has been extended to cases which, if not clearly within the letter, are certainly within the spirit of the law, as when it was applied to the case of a passenger injured in consequence of a failure of the company to fence its road. And it is in strict harmony with the principle and reasoning of these cases to say that the statute also embraces a case like the one before us.

Here, if the fence had been erected, the accident would not have happened. Solely and entirely from the omission of the company to perform this clear, positive, absolute duty, the plaintiff is maimed and deprived of his right arm. Had it been an ox or horse, or some other domestic animal, which had been injured by the failure to erect the fence, the liability of the company would be clear and absolute, regardless of the question whether the owner had been guilty of negligence. Can it be, then, a perversion of the intent of the statute to hold the company liable for a breach of the same duty, when a helpless infant is injured without any fault on the part of the parents? It appears to us not. In *Wakefield v. Conn. &*

*Pass. R. R. Co.*, 37 Vt. 330, where a statute required the bell on locomotive engines to be rung, or the whistle blown, for a certain distance at crossings, the court held that this duty was imposed upon railroad companies, not only in refer ence to persons approaching or in the act of crossing the track, but in reference to all persons who, being lawfully at or in the vicinity of the crossing, might be subjected to accident and injury by the passing train.  In that case the plaintiff had crossed the track, and driven about thirty-five rods south, when a train of freight cars came over the road from the south, and was within five or six rods from the plaintiff's team when first discovered by him and his horses.  The forward pair of horses, being greatly frightened, instantly turned back with such force as to break their fastenings to the other horses, and ran back to the crossing, where they were injured by the passing cars.  The court, while holding that the connection of the failure to blow the whistle or ring the bell with what did happen seemed very slight, yet could not for that reason say that the company was not responsible for any injury caused by an unwarrantable omission to perform the duty imposed by law.

In *Singleton v. The Eastern Counties R. R. Co.*, 97 Eng. C. Law, 287, it seems to be assumed by the judges, that if the children had strayed upon the railroad track through the fence, at a place where a rail was off, which fence the company was bound to keep in repair, this would be such an act of negligence as would render the company liable.  Mr. Justice WILLIAMS says:  "There was nothing to show how the children got on the railway.  All was mere conjecture and surmise."  But the fair inference from the case is, that if it had appeared that the child passed on to the track through a defective fence which the company was bound to keep up, then the action might have been maintained.

In this case, the connection between the omission of the company to perform its duty, and the accident which happened, is

direct, clear and certain.    If the company had built a fence at that place, the child would not have been injured.    So the jury must have found, under the instructions.    Upon such a state of facts, we are unable to say that the company is not liable for the damage sustained.

The sixth instruction, above cited, calls for no special remark. We think it substantially correct.

It was further insisted that the judgment should be reversed because the damages are excessive.    The jury gave a verdict for $8,000.    It is, of course, difficult for any one to estimate the real amount of damages which the child has sustained in consequence of the loss of his arm.    The question was one peculiarly proper for the jury to determine.    We cannot interfere, unless the excess is so great that we can say the jury must have acted under some improper influence or bias in the matter. This we cannot say.

There are many other points discussed in the arguments of counsel, but we do not deem it necessary to notice them.    The questions which we have noticed are the controlling ones, and dispose of the cause.

*By the Court.*—The judgment of the county court is affirmed. DIXON, C. J., dissented.