## ROGERS vs. HENRY.

SLANDER. (1) *What words actionable.* (2, 4) *Punitory damages.* (3, 5, 6) *Setting aside verdict for excessive damages.*

1. In slander, words charging plaintiff with being " a thief," and with having " stolen $800 of his father's money," are actionable *per se.*
2. In case of such a charge the jury may award *punitory* damages if the evidence is such as to justify it.
3. Courts may and should sometimes set aside verdicts for excessive damages, not only where compensatory damages alone are recoverable,

but also in that class of cases in which punitory damages may be allowed upon proper evidence.

4. The undisputed facts in this case show that the slanderous words were spoken in anger, under considerable provocation, in a violent altercation, and without any deliberate purpose; and the jury should not have allowed punitory damages.

5. It being apparent that the verdict (which was for $400) included not only compensatory but also punitory damages, the court erred in refusing to set it aside as excessive.

6. The decisions of this court as to the setting aside of verdicts for excessive damages reviewed, per LYON, J.

APPEAL from the Circuit Court for *Vernon* County.

Action for slander. The complaint alleges that the defendant, in the presence and hearing of several other persons, maliciously spoke to the plaintiff, and of and concerning him, the following false and defamatory words: " You are a God damned thief, and I can prove it. You stole eight hundred dollars from your father." " You stole eight hundred dollars from your father; so your kindred say."

The answer is, *first*, a general denial; and *second*, by way of mitigating the damages, that at the time the slanderous words are alleged to have been spoken, the parties were excited, and each made use of angry and unbecoming language towards the other, and the plaintiff then said false, scandalous, disrespectful and slanderous things to and concerning the defendant, some of which sayings are set out in the answer, and that whatever was said by the defendant derogatory to the plaintiff was provoked thereby.

It appears from the evidence that the parties were candidates for town offices on rival tickets, and coming together on the day before the town meeting, they fell into an angry dispute relative to something which it was claimed by the defendant the plaintiff had charged him with having said relative to his (the defendant's) candidacy. This the plaintiff denied. It was in this conversation, or altercation, that the alleged slanderous words were spoken by the defendant, and

the same was had in the presence and hearing of ten or twelve citizens.

The circumstances under which the words were spoken, and the character of the interview between the parties, will be best stated by giving brief extracts from their testimony as given upon the trial. The plaintiff testified as follows: "As we came to where they were talking, *Mr. Henry* spoke and said, 'There is one lie settled.'; and I said, 'That is right; settle all these bad stories'; and said he, 'By God I can'; and said I, 'That is right'; and said he, 'I understand a man said, up in the town of Jefferson, that if I was not elected treasurer I would break up the town.' I said, 'Who was it?' and said he, 'The first two letters of his name are *F. E. Rogers*,' Said I, 'I didn't'; said he, 'You did'; I said, 'I didn't'; said he, 'You are a damned liar'; said I, 'Hold on!' and said I, 'We were up at the mill, and Mr. Smith wanted to know about the election, and he wanted to know if *Henry* was going to run; and said I, 'I cannot support *Henry*; one of our neighbors said that *Henry* said if he aint elected it will be the damnedest dearest thing for the town'; and said he, 'You didn't say that'; and said I, 'I did'; and said he, 'You are a damned liar'; and said I, 'I will give you ten dollars for any man you can bring'; and said he, 'You are a God damned liar'; and said I, 'You are a damned lying son of a bitch'; and said he, 'You are a God damned thief, and I can prove it; you stole $800 of your father's money.' Said I, 'You will have to prove it'; said he, 'Your folks say so'; and said I, 'You will have to prove it.'"

The following is the defendant's version of the affair: "I came across the street to John Riley's shop, and he and I had some words there, all in good part; I asked him what made him repeat this story. *Mr. Rogers* was there when I came there first; he and a whole crowd stood there by Riley's shop; and I made the remark: 'That is something like some other stories that has got started;' and, said I, 'Somebody circulated that if I was not elected town treasurer of the town of Franklin, I

would break up the town;' and said *Rogers*, 'Who was it?' Said I, 'The two first letters of his name are Frank Rogers;' and he said, 'You are a liar;' and said I, 'You are a gentleman, and that is another lie;' and he said, 'Who told you this?' Said I, 'Young Smith;' and, said he, 'You are a God damned liar;' and, said I, 'You are another liar;' and he started up as though he was going to fight, and he shoved up his sleeves, and said he, 'You are a God damned lying, thieving son of a bitch;' and said I, 'You are a God damned lying, thieving son of a bitch; you stole $800 from your father; so your folks say;' and said he, 'You will have to prove it?'"

The jury found for the plaintiff, and assessed his damages at $400. The defendant moved for a new trial on the ground that the damages awarded were excessive; the court denied the motion, and judgment was entered on the verdict. From this judgment the defendant appealed.

*Carson & Graham* (with *Carpenter & Chase*, of counsel), for appellant, argued that as the words complained of were provoked by the plaintiff, and were uttered in the heat of passion, and all knowledge of their truth disavowed at the time, they were not actionable, the *intent* to impute crime being wanting (4 Scam., 30; 3 Mass., 553; 15 Ill., 311; 25 E. C. L., 412; *Tuckerman v. Sonnenschein*, Ch. Leg. News, Feb. 10, 1872); that at least, under such circumstances, plaintiff should be allowed to recover only *compensatory* damages, which in this case would be merely . *nominal* (24 Wis., 183); and that it is the duty of courts to set aside verdicts for cause in slander cases as well as in others. Style, 465; 2 McCord, 230; 5 Taunt., 280, 281; 9 Johns., 51. As to the cases in which verdicts will be set aside for excessive damages, they cited 19 Barb., 463, 467; 12 id., 492; 3 Sandf. S. C., 19; 3 Mason, 102; 3 Pick., 379; *Douglass v. Tousey*, 2 Wend., 352; *Child v. Homer*, 13 Pick., 503; *Spicer v. Railway Co.*, 29 Wis., 580.

*P. L. Spooner* and *F. J. Lamb*, for respondent, to the point that, the *gravamen* of the complaint being the malice of the

defendant in uttering the slander, the court would not interfere with the verdict unless it was *grossly* excessive, so much so as to imply that the jury was governed by improper motives in fixing the amount, cited *Cramer v. Noonan*, 4 Wis., 240; 6 Blackf., 55; 3 Gra. & Wat. on N. T., 1139, 1152, 1153.

LYON, J. The language alleged in the complaint to have been spoken by the defendant to and concerning the plaintiff, imputes a criminal offense to the latter, and the words thus spoken are actionable *per se.* There can be no doubt from the evidence that the words were spoken by the defendant as alleged. There is no conflict of testimony on this subject. Hence the plaintiff is entitled to recover *some* damages.

The books are full of cases in which the courts have set aside verdicts because the damages awarded were excessive. This power has been frequently exercised in this state. *Potter v. Ch. & N. W. R. W. Co.*, 22 Wis., 615; *Goodno v. The City of Oshkosh*, 28 id., 300; *Spicer v. Ch. & N. W. R. W. Co.*, 29 id., 580. It should be observed, however, that in all of these cases the plaintiffs were entitled to recover only compensatory, and not punitory damages. Yet the power and duty of the courts to set aside verdicts for excessive damages in cases in which the jury might, if the evidence justified it, properly award punitory damages, are equally well settled, although in such cases the power is less frequently exercised. This case belongs to the latter class.

The rule by which the courts are governed in setting aside verdicts, or refusing to do so, in cases like this, for alleged excessiveness of the damages given by the jury, was stated by Chief Justice WHITON in *Cramer v. Noonan*, 4 Wis., 231, as follows: " It is only in cases where the amount of damages awarded by the jury is so great as to show that they were governed by improper motives in fixing the amount, that this court can interfere and set aside the verdict for the reason that the damages are excessive, when the action is one in which exemplary

damages can be given." (P. 240.) In *Birchard v. Booth*, 4 Wis., 67, which was an action to recover damages for an assault and battery, the court refused to disturb the verdict (although dissatisfied with it) because, as stated by Justice COLE, in the opinion delivered by him, " the damages are not so excessive as to bear marks of passion, prejudice or corruption on the part of the jury." A similar rule was recognized by this court in *Schmidt v. The Mil. & St. Paul R. W. Co.*, 23 Wis., 186, which was a cause where only compensatory damages could be recovered. Justice PAINE there said : "We cannot interfere unless the excess is so great that we can say the jury acted under some improper influence or bias in the matter." (P. 195.)

In *Goodno v. The City of Oshkosh*, *supra*, I ventured the opinion that in a case where the plaintiff is only entitled to compensatory damages, "if the damages awarded are so greatly disproportioned to the injury as to furnish reasonable ground for belief that the jury have, in fact, awarded exemplary damages, the verdict should be set aside as against law ; and that in such a case it is quite immaterial whether the court think the verdict bears marks of corruption, prejudice or partiality on the part of the jury, or otherwise." (P. 305.)

In the case of *Collins v. The Albany & Schenectady R. Co.*, 12 Barb., 492, will be found a most interesting and able discussion of this subject by Judge HARRIS, containing a review of many of the authorities relating to it ; and the learned judge deduces therefrom the following general rule : " When the damages found by the jury are either *so large* or *so small* as to force upon the mind of every man familiar with the circumstances of the case, the conviction that, by some means, the jury have acted under the influence of a perverted judgment, it is the duty of the court, in the exercise of a sound judicial discretion, to grant a new trial." (P. 499.) See also *Clapp v. The Hudson River R. W. Co.*, 19 Barb., 461.

It seems to me that the rule laid down by Judge HARRIS in the cases above cited is correct in principle, and it is suffici-

ently comprehensive in its terms to include, not only cases where the verdict is the result of passion, prejudice, corruption, or any other improper feeling or motive on the part of the jury, but also those in which punitory damages have been given contrary to law. Whether the error of the jury is the result of bad motives, or of palpable mistake of law and of their duty, the consequences to the defendant are the same; and it seems clear to my mind that there is no good reason why he ought to be relieved in one case and not in the other.

That exemplary damages were given in this action, is too plain for argument. It is impossible to say from the testimony that the plaintiff was injured, by reason of the speaking of the slanderous words, to the amount of four hundred dollars. There can be no doubt that a considerable portion of the damages were given by way of punishing the defendant, and not as compensation for the injury sustained by the plaintiff. Ought punitory or exemplary damages to have been awarded? We think not. The defendant assailed the plaintiff's character on a single occasion, and in the excitement of an angry conversation, in which the lie was freely given, and profane and grossly vulgar epithets were freely applied by each party to the other. While it is apparent that these parties are men of character and influence in the community in which they reside, and while it may be presumed that, ordinarily, neither of them would violate the recognized proprieties of social life, yet on this particular occasion they seemed, in the passion of the moment, to have forgotten those proprieties entirely, and each was reckless, almost frantic, in his abuse and denunciation of the other. It is difficult to say, from the evidence, which of them is to be blamed most for the occurrence of this disgraceful street brawl; but we think it will not be far amiss to charge up the blame to them in about equal proportions. It was under these circumstances that the slanderous words were spoken by the defendant, and such circumstances exclude the idea that the words were, or could have been, spoken with

malice on the part of the defendant. *Primia facie* the law implies malice from the speaking of the words, but this implication or presumption may, under proper pleadings, be rebutted by evidence. And if so rebutted, the action is not thereby defeated, but the right to recover exemplary damages is defeated by such evidence. The *gravamen* of the action is the injury to the reputation of the plaintiff; and if that has been slandered, the plaintiff is entitled to recover, unless the words complained of are privileged, although the defendant may have spoken such words honestly and without malice. *Wilson v. Noonan*, [not yet reported.] But in such a case, as before observed, the plaintiff can recover only actual or compensatory damages.

Further, while injured feelings is an element in estimating compensatory damages, yet if the words were spoken under circumstances of great provocation given by the plaintiff, that fact may mitigate, or may entirely defeat, any allowance to the plaintiff on account of injured feelings and mental suffering caused by the slander. *Wilson v. Young*, 31 Wis., 574. That there was considerable provocation given by the plaintiff when the slander was uttered, must be conceded.

Applying the principles or rules of law above stated to the facts of this case, we are satisfied that the verdict was so excessive in amount as to make it the duty of the court, in furtherance of justice, to interfere and set it aside. We do not intimate that the plaintiff ought not to recover anything more than nominal damages, neither do we deem it proper to indicate the sum which he ought to recover, but leave the whole question of the amount of damages to be determined by another jury in the light of the principles herein stated.

Neither of these parties occupies a very enviable position with reference to the transaction out of which the difficulty between them originated, and I must be permitted to say, that now, after having had ample time for their anger to cool, they owe it to themselves and their neighbors, amicably to adjust

the controversy on some fair basis, or, if unable to do so, to call upon some discreet friends to adjust it for them, and thus end this profitless litigation.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial awarded.