---o---

HERMAN ISABEL, Respondent, *vs.* THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

1. *Railroads—When responsible for killing of person notwithstanding his contributory negligence.*—Although one may be improperly or unlawfully on the track of a railroad, that fact will not discharge the company or its employees, from the observance of due care, and where he is run over by the train and killed, the company will be responsible if its officers could have avoided the accident by the exercise of ordinary caution and watchfulness.

2. *Railroads—Negligence—Degree necessary to charge company in case of infant.*—Proof of a less degree of negligence will be necessary in order to charge a railroad company for injuries in case of an infant than in that of an adult.

3. *Railroad private property—Right to pass upon.*—A railroad track is private property and, except at highway crossings, persons have no right to pass upon it.

4. *Trains—Diligence in running—In town—Over crossings.*—The same diligence is not imposed on the officers of a train in running it through the country at large, as in the streets of a town, or the crossings of a public highway.

5. *Railroads—Running over child—Care necessary to be exercised by company—Proximate cause.*—In suit for damages against a railroad company for running over a child which had strayed upon the track, it appeared that the child was seen by the officers in time to avoid the collision, but mistaken

for something else; and that by the exercise of a proper degree of care and caution, they might, after first observing the object have discovered that it was a child in time to stop the train before the accident occurred. *Held*, that in such case, although some negligence might have been attributable to those having charge of the infant, it was not the proximate cause of the casualty, and the company would be liable.

6. *Railroads—Statutory requirement as to fencing—Failure to fence may be shown in case of killing of child, when.*—Where the road bed of a railroad is laid near to a dwelling-house, and the child of the owner gets upon the track and is killed by the train, plaintiff may show, as an element of negligence on the part of the company, a failure to fence its track as required by the statute, even though the primary object of the requirement was merely protection of cattle and other stock.

*Appeal from Caldwell Circuit Court.*

*Carr & Leach,* for Appellant.

I. The law requires railroad companies to enclose their roads with a fence where it passes along inclosed or cultivated fields, etc. The petition fails to show that Isabel was killed at a point embraced by any of the above requisitions.

II. For the first time the idea is advanced, that fences are erected to keep human beings from railroad tracks.

The objects of fencing railroads are simply the preservation of the lives of passengers, the property of the railroad companies, and to prevent stock from getting upon the track. And failure to fence is no proof of negligence, so far as it affects the case at bar.

III. The want of vigilance and care on the part of the grandmother was the direct, sole and absolute cause of the wrong complained of. If she had not been negligent in the discharge of her duty, the accident would not have happened.

It has been held negligence as a matter of law to allow a child of about two years to go into the streets unattended. (Hartfield vs. Roper, 21 Wend., 615; Callahan vs. Bean, 9 Allen, 401; Kreig vs. Wells, 1 E. D. Smith, 74; Mangum vs. Brooklyn R. R. Co., 36 Barb., 230; Glassey vs. Hestonville, etc., R. Co., 57 Penn. St., 172; Singleton vs. Eastern Counties R. Co., 7 C. B. [N. S.], 287; Boland *et ux.* vs. Missouri R. R. Co., 36 Mo., 484; Philadelphia & Reading R. R.

Co. vs. Spearen, 47 Penn. St., 300; Holly vs. Boston Gaslight Co., 8 Gray, 123; Wright vs. Malden, etc., R. R., 4 Allen, 283.)

IV. It is unlawful for any one not connected with the road to walk along the track of any railroad. (Wagn. Stat., 311, § 43, last clause.)

An engineer is not bound to foresee the presence of any one on the track, even when it is open to an adjoining highway. (Shearm. & Redf. Neg., § 493; Philadelphia & Reading R. Co. vs. Hummell, 44 Penn. St., 375.)

*M. A. Low*, for Respondent.

I. It was not error to permit witnesses to testify that the railroad was not fenced at the place of the accident. If from the want of fence, accidents were more liable to occur at that point than would have been the case if the road had been fenced, and the company had notice of this fact, it was the duty of the defendant's employees to use more than ordinary care and diligence to prevent such accidents, and to run their trains with reference to such circumstances. (Schmidt vs. Milwaukee etc. R. R. Co., 23 Wis., 186; Singleton vs. Eastern, etc. R. R. Co., 97 Eng. Com. Law, 287.)

The disregard of the positive command of the statute was negligence (Karle vs. K. C., etc. R. R. Co., 55 Mo., 476), and the company were liable for all damages flowing naturally from such default. And regardless of the statute, it would seem that where a railroad company runs its road through a man's yard, where his children have the right to play, unrestrained, it ought to take all reasonable precautions to guard against injuring such children with its dangerous and destructive machinery. (See Railroad Co. vs. Stout, 17 Wall., 657; Britton vs. Great Western, etc. Co., L. R., 7 Exch., 130; S. C., 1 Eng. Rep., 381; Kay vs. Penn. Railw. Co., 65 Penn. St., 269; Lynch vs. Nurdin, 1 Q. B., 29; Bellefontaine R. R. Co. vs. Snyder, 18 Ohio St., 399; Railw. Co. vs. Bohn, 12 Am. Law Reg., 759, note.)

II. If defendant's employees, in charge of the train, by the exercise of ordinary skill and caution, could have observed the child upon the track, and recognized him as an infant, in time to stop the train before it ran over him, the company are liable, even though the guardian of the child may have been negligent in permitting it to wander upon the railroad track. (Cincinnati, etc. Rail. Co. vs. Smith, 22 Ohio St., 227; Richmond vs. Sacramento Rail. Co., 18 Cal., 351; Railroad Co. vs. Gladmon, 15 Wall., 401; O'Flaherty vs. Railroad Co., 45 Mo., 70; Boland & Wife vs. Missouri R. R. Co., 36 Mo., 484; Brown vs. Hann. & St. Jo. R. R. Co., 50 Mo., 461; Morrisey vs. The Wiggins Ferry Co., 43 Mo., 380; B. & O. R. R. Co. vs. Dougherty, 36 Md., 366; Bemis vs. Conn. etc. Rail. Co., 42 Vt., 375; Walsh vs. Miss. Trans. Co., 52 Mo., 434, Lynch vs. Nurdin, 1 Ad. & El. [N. S.], 28; Karle vs. K. C., etc., R. R. Co., *supra;* Berge vs. Gardiner, 19 Conn., 507; Bronson vs. Southbury, 37 Conn., 199; City vs. Kirby, 8 Minn., 169; Robinson vs. Cone, 22 Vt., 213; Whirley vs. Whiteman, 1 Head., 620; O'Flaherty vs. Union R. R. Co., 45 Mo., 70; Railroad Co. vs. Stout, 17 Wall., 657.)

The employees, in charge of a train, must use ordinary care and prudence to see and save even trespassing animals. (Rockford, etc. Rail. Co. vs. Lewis, 58 Ill., 49; Cincinnati etc. Rail. Co. vs. Smith., 22 Ohio St., 227; Bemis vs. Conn. etc. Rail. Co., 42 Vt., 375; Toledo, etc. Rail. Co. vs. Ingraham, 58 Ill., 120.)

The engineer, upon his own version of the matter, was guilty of gross negligence, in not slacking the speed of the train when he first saw the obstruction on the track at a point where children were in the habit of crossing. It is no excuse that he thought it was an animal. He was in doubt as to what it was, and ran recklessly along until it was too late to prevent running over it. (East Tennessee Railw. Co. vs. St. John, 5 Sneed, 524; Wright vs. N. Y. Cent. Railw. Co., 25 N. Y., 569; Regina vs. Longbottom, 3 Cox [C. C.], 439; Whart. Neg., § 802; Lafayette Railw. Co. vs. Adams, 26 Ind., 76; Chicago, etc. Railw. Co. vs. Cauffman, 38 Ill., 424; Rail-

road Co. vs. Spencer, 47 Penn. St., 300; Railroad Co. vs.
Bami., 55 Ill., 226; Garner vs. Hann. & St. Jo. R. R. Co.,
34 Mo., 235; Kerwhaker vs. C. C. & C. R. R. Co., 3 Ohio
St., 172.)

WAGNER, Judge, delivered the opinion of the court.

This was an action by plaintiff to recover damages for the
negligent killing of his infant son, by defendant, while run-
ning and managing a locomotive and train of cars on its rail-
road.

The evidence tended to show that plaintiff's wife being
dead, he had placed the child in the care of its grandparents
who resided about seventy-five yards distant from the road.
The house was built before the railroad was constructed; but
there was no fence intervening between it and the railroad.
The grandmother, who had the care and custody of the
child, which was only about twenty-one months old, testified
that it was not permitted to go upon the railroad track, but
sometimes played about the yard with the other children;
that she prevented it from going out of the house as much as
she could; that she kept it pretty close and never allowed it
to go away; that it never had gone away before, and that on
the morning on which it was killed, whilst she was tempora-
rily absent, it slipped out of the house and went upon the
track. It there sat down between the rails. The morning
was bright and clear, and for eighty rods in the direction in
which the cars were running, the track was straight and al-
most level.

The evidence of the plaintiff tended to show that the child
might have been seen at least eight hundred feet from the
place where it was run over and killed; and the testimony of
the defendant's witnesses was, that it was seen in time to have
stopped the train, but that it was mistaken for another ob-
ject; and it was not discovered that it was a human being
till the cars had approached too near to avoid the catastrophe.

Under the instructions of the court the jury found a verdict
for the plaintiff.

The fifth and sixth instructions given for the plaintiff are the material ones and they alone will be noticed.

The fifth instruction declared, that though Isabel had no right to be on the track of defendant's railroad, yet, the fact that he was upon their property, did not discharge them from the observance of due and proper care towards him; nor, did it give defendants or their employees any right to run over him, if that could have been avoided by the exercise of ordinary care and watchfulness.

The sixth instruction told the jury that if they believed from the evidence that George A. Isabel, at the time he was killed, was a minor, under two years of age, that his mother was dead, that the plaintiff was his father, and that those in charge of defendant's train, by the exercise of ordinary skill and caution might have observed the child on the railroad track, and recognized him as an infant, in time to stop the train before it reached and ran upon him, they would find for the plaintiff, though they might believe from the evidence that plaintiff, or those having the child in charge, were guilty of negligence in not preventing the child from going upon the railroad track.

For the defendant the court gave four instructions, and those numbered six, eight and nine are the only important ones.

The sixth asserted that it was the duty of the parent or person having the custody of a child, at all times to shield the child from danger, and that duty was the greater where the danger and risk were imminent; and the degree of protection should be in proportion to the helplessness and indiscretion of the child, and the imminence of the danger.

The eighth declared that it devolved upon the plaintiff to show by the evidence, that the death of the child was occasioned by the negligence of the employees of defendant in charge of the train; and the fact that the child was killed at a point on defendant's railroad, shown in evidence, raised no legal presumption of negligence on the part of defendant or its employees.

The ninth told the jury that the use of a railroad track, except where a highway crosses it, is exclusively the right of the railroad company which owns it, and the company and its employees are under no obligation to anticipate that children will be sitting or playing on the track, but they have a right to presume that no one will be on the track, except where a highway crosses it; and if the jury should find from the evidence, that the employees of the defendant on the train, so soon as they saw the child, did all in their power to stop the train, and that the child was killed on the road at a point where it was not crossed by a highway, and that the employees, before and at the time they first saw the child, were in the exercise of ordinary care and diligence, then the verdict should be for the defendant.

The instructions refused by the court which the defendant asked for, were objectionable; but it will be sufficient to notice the third. That was, that if the jury believed from the evidence that the child was killed by reason of the negligence of the person who was in charge of it, and had it in custody, and that the carelessness of such person materially contributed to the death of the child, then the finding should be for the defendant.

There can be no objection urged against the plaintiff's fifth instruction. No doctrine is better established in this State than the principle it enunciates. Our decisions have been uniform, that although a person may be improperly or unlawfully on the track of a railroad, still that fact will not discharge the company or its employees from the observance of due care, and they have no right to run over and kill him, if they could have avoided the accident by the exercise of ordinary caution or watchfulness.

The sixth instruction is liable to some criticism, and is not as definite as it should be. It declares that if those in charge of defendant's train, by the exercise of ordinary skill and caution might have observed the child upon the railroad track and recognized him as an infant, in time to stop the

train before it reached and ran over him, then the verdict should be for the plaintiff.

As an abstract proposition of law, this declaration in all cases might not be strictly correct. It might seem to cast upon the company a greater degree of diligence than is in all instances required; but when examined in the light of the evidence we think the objection disappears. The track is private property, and, except in the case of crossing highways, persons have no right to be on it. The company is entitled to a clear track, and it is not to be presumed that persons will be on it when they have no right to be there. The same diligence will not be necessary in running trains through the country that would be required in the streets of a town or the crossing of a public highway.

In order to make a defendant liable for an injury where the plaintiff has also been negligent, or in fault, it should appear that the proximate cause of the injury was the omission of the defendant, after becoming aware of the danger to which the plaintiff was exposed, to use a proper degree of care to avoid injuring him.

Diligence and negligence are relative terms and depend on varying circumstances. An act may be negligent at a particular place, which would not be so at another place, and under different circumstances.

In the present case the house was built before the road was constructed. The company had run its road in close proximity to the house, and had left the well where the family got their water on the other side of the track. Of this, the employees were well aware. They knew that the track ran close to the house, and that the family were accustomed to cross it to obtain water. This ought to have increased their vigilance.

All these facts, perhaps, would not amount to much in the case of an adult who should exercise his faculties and guard against the danger, but in the case of an infant, who has no discretion, the rule would be otherwise.

Moreover, it is clearly shown that the engineer and fireman discovered the infant, and had abundance of time to have

stopped the train and saved its life; but they debated as to what it really was, till it was too late.    Might they not, by a close scrutiny, and a proper observance, which it was their duty to give when they discovered an object on the track, have discovered that it was a child?    The testimony is conclusive, that the child was dressed in red, and that would have very easily distinguished it from a hog or a dog. · The instruction, if it was intended to convey the idea that the employees, by using ordinary skill and caution after they observed the object on the track, could have distinguished that it was a child, was entirely proper.    It was surely susceptible of this construction; and we are not justified in supposing that it was given with any other intent, or that it was differently interpreted by the jury. When the facts of the case are applied to it, this conclusion follows.

The case presented, then, is, that the persons running the train, saw something on the track in time to avoid collision or injury; and if, after they observed it, they could, by the exercise of that care and caution which the law imposes upon them have perceived that it was a child, in time to stop the train, and they were negligent, the company is liable.

Whilst some negligence might have been attributable to those who had charge of the child, if it was not the proximate cause—a recovery is not barred.    People in the situation in life of those who had the custody of the child cannot always attend to it strictly; and if it escapes from them unawares, it must not be injured simply because it so escapes.

The ninth instruction given for the defendant, after laying down the law very fairly as to the right of the defendant to the exclusive and uninterrupted enjoyment of its track, goes even further than plaintiff's instruction first commented on in reference to defendant's liability.    That instruction declares that defendant is not responsible if its employees before, and at the time they first saw the child, were in the exercise of ordinary care and diligence.    Plaintiff's instruction only required care and caution in recognizing the child, after some object was observed on the track, whilst the defendant's instruction made it

obligatory that care and caution should have been exercised before the infant was seen. As this was defendant's own instruction, it cannot complain; it was a much better one for the plaintiff than the one he got.

The sixth instruction given for defendant needs no particular comment. It lays down the duties of parents, or those having infants in custody, in affording them protection and shielding them from danger.

It is complained that the seventh instruction was refused; but everything that was contained in it was given in a more full and satisfactory form in the ninth instruction.

The third instruction was rightly refused. It told the jury that defendant was not liable, if the person who had the child in charge, by carelessness, materially contributed to the child's death. This was incomplete; it did not make the negligence the proximate cause, nor did it say anything about the requirement of care and caution on the part of the defendant.

It is alleged as error, that plaintiff, on the trial, was permitted to introduce evidence to show that there was no fence along the road where the child was killed. It is argued that our statute, in relation to fencing, was intended to prevent cattle from straying on the track, but not to guard against children coming thereon.

This same question arose in Wisconsin in Schmidt vs. The Milwaukee and St. Paul Railway, (23 Wis., 186,) and the case turned and was decided upon the fact that the company had omitted to comply with the statute requiring it to fence.

The case was like this: the company had built its road, cutting the man's farm in two, only the house was further from the road in that case than in this. There, a path led from the house across the road to the other portions of the premises, on which path the child was injured, just as there was one here leading from the house to the well near which this child was killed.

In answer to the argument that the statute was not intended to apply to such a case, the court said that it must, in the first place, be remembered that the statute imposed upon all rail-

road companies the positive duties of erecting and maintaining good and sufficient fences on both sides of their roads, with gates or bars therein, and farm crossings for the use of the proprietors of the adjoining lands. That was a clear, distinct and precise duty imposed by the legislature; and the failure to perform it in that case was the sole cause of the injury; for it was found that a fence would have prevented the accident. The facts in the case showed, that for more than a year the company had run its trains over the road, neglecting all the while to build a fence at the place; omitting to do not only what the law required, but common prudence demanded should be done, as well for the protection of persons traveling on the road, as for the security of the domestic animals of those residing along the track, and the safety of children exposed to its dangers who were incapable of taking care of themselves. When the company neglected to perform its duty, did it not necessarily assume responsibility for all damages which might result from that cause? Could the court make an exception to this general liability, when an infant was injured solely in consequence of the want of a fence? Would it not be an unwarrantable restriction of the statute, to hold that the duty imposed upon the company of maintaining a fence along its road had no reference to children?

The court said that if the verbiage of the statute was looked to, it might be concluded that the object of the law was solely for the protection of domestic animals, and yet it had been held that the law had a broader application, and was intended as a police regulation to secure the safety of passengers. It had been extended to cases which, if not clearly within the letter, were certainly within the spirit of the law; and the conclusion was arrived at, that it was in strict harmony with the principle and reasoning of the cases to say that the statute embraced the protection of children.

The same doctrine seems to prevail in England. In Singleton vs. The Eastern Counties R. R. Co., (7 C. B. N. S., 287,) it is assumed by the judges, that if the children had

strayed upon the railroad track through the fence, at a place where a rail was off, which fence the company was bound to keep in repair, this would be such an act of negligence as would render the company liable.

Williams, J., in his opinion said: "There was nothing to show how the children got on the railway. All was mere conjecture and surmise." The plain inference from the case however, is that, if it had appeared that the child passed on the track through a defective fence, which the company was bound to keep up, then the action might have been maintained.

It is unnecessary to go the length of the Wisconsin case in this decision, or to hold that the statute imperatively requires that a fence should be constructed for the protection and safety of children. Unquestionably, when the law enjoins a duty, and commands a company to build a fence along the line of its road, where it runs through a man's farm, the omission to build is a breach of that duty which it owes to those for whose protection the fence was designed. Whilst it may be primarily intended to secure one object, it may incidentally have an effect on others. All must go together in determining the measure of the obligation. But, under certain exigencies, prudence would demand what was not positively enjoined by the strict letter of the law. Thus, exposing dangerous machinery where children are liable to play with it, and get hurt by it, might render the owner liable, though the children had no right to touch or interfere with it. So, running a railroad close to a man's house where his family and children resided, would require that certain safe guards should be used to shield them from danger.

There was no instruction asked for or given on the question of fencing. The failure to fence was merely introduced in evidence as an element conducing to show negligence; and, under all the circumstances, as the company had built its road close to the house, and was aware that the family resided there, I cannot say that it was error. Owing to the danger

at that particular place, made so by the company's act, a corresponding diligence devolved upon it.

. Upon a full review of the whole record, I cannot see any such error as would justify a reversal.

Judgment affirmed ; all the judges concur.